CARPENTER PAPER CO. v. CALCASIEU PAPER CO., Inc.

No. 11912.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1947.

Rehearing Denied Jan. 7, 1948.

G. L. DeLacy, of Omaha, Neb., and Ogden K. Shannon, Jr., of Fort Worth, Tex., for appellant.

William E. Allen and Sam Billingsley, both of Fort Worth, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, defendant below, is a corporation incorporated under the laws of the State of Delaware, but with a permit to do, and doing, business in the State of Texas, and having a designated agent for service in Dallas County, Texas, one F. F. Bokern.[1]

Appellee, plaintiff below, a corporation incorporated under the laws of the State of Louisiana, brought this suit to recover $33,417.05 due on invoices for paper products sold and delivered in June, 1946, to defendant at its various branches, $11,327.44 of it to the Fort Worth, Dallas and San Antonio branches, and $22,089.61 of it to its Oklahoma City, Kansas City and Omaha branches.

Defendant's designated agent for service in Texas having been served, defendant, appearing specially, moved to dismiss the suit on the ground that neither the plaintiff nor the defendant is an inhabitant or resident of, nor did the cause of action arise in, the State of Texas, and that, therefore, the maintenance of the suit in the Northern District of Texas was in violation of Sec. 51, Judicial Code, 28 U.S.C.A. § 112, the venue statute.

Plaintiff, invoking Art. 2031a, Vernon's Ann.Civ.St. Texas, and pointing out that the defendant under a permit to do business, maintains extensive branch houses in the Northern and Western Districts of Texas, and transacts a large volume of business in the State, and that a large part of the goods covered by the account sued on were ordered for and delivered to defendant in the Northern and other districts of Texas, successfully resisted the motion, and it was denied.

Thereafter, subject to its special appearance and motion to dismiss for improper venue, the defendant filed its answer and counter-claim. Admitting that it had bought and had not paid plaintiff for the paper products it sued for, it set up a counter-claim against plaintiff for damages resulting from the breach by plaintiff of its contract to sell and deliver during the year 1946 to defendant's various branch houses 2500 tons of craft paper at the maximum price fixed by the Office of Price Administration.[2]

Plaintiff moving to dismiss defendant's counter-claim, the district judge sustained the motion and dismissed it and entered judgment for plaintiff for the amount of its claim.

---

[1] Bokern was designated by defendant in compliance with Art. 2031a, Vernon's Ann.Civ.St.Texas, requiring it as a condition of doing business in Texas to execute a power of attorney designating a resident of Texas for service of process. This designation, executed by defendant in exact accordance with the statute, designated him as "its true and lawful service agent in Texas upon whom process may be served in all suits, proceedings and causes of action pending or which may hereafter be filed in the State of Texas in which this corporation is a party or is to be made a party. * * * and service of any process * * * upon said service agent shall be taken and held as due service on this corporation."

[2] Defendant alleged: that plaintiff had complied with the contract during the first two quarters of the year 1946, and made shipments to defendant as ordered; that during the month of June, plaintiff's president had in writing notified defendant that the control of the stock of plaintiff had changed hands, that the new owner intended to use the entire output of the mill, and that plaintiff would not ship any further paper under the contract; that defendant, refusing to accept plaintiff's breach, demanded shipments but that plaintiff had failed and refused to make them; that there was a maximum price fixed by the Office of Price Administration during the four quarters of 1946 covering craft paper of the kind and type manufactured by plaintiff, and that plaintiff's breach of its contract damaged defendant in the sum of $145,000 less the sum of $33,417.05 sued for by plaintiff.

Defendant appealing from this order is here challenging the denial of its motion to dismiss because of improper venue and the granting of plaintiff's motion to dismiss defendant's counter-claim for want of a cause of action.

■ We think the venue was properly laid and that there was no error in denying the motion of defendant to dismiss because it was not.[3] In Neirbo's case no point whatever is made upon whether the cause of action accrued in the State of New York, where the suit was brought, or out of it. There, as here, the designation for service was in th ebroadest terms and it was there flatly and unequivocally held that the designation made under the New York statute, General Corporation Law, Consol. Laws, c. 23, § 210, the same in substance as the Texas statute, of an agent "upon whom all process in any action or proceedings against it may be served within this state" operated as the unqualified consent of the corporation to be sued in the state.

In the Oklahoma Packing Co. case, on the other hand, Wilson & Company had, in accordance with the Constitution and the Statutes of Oklahoma, designated their agent for service by filing a certificate consenting that action might be brought against it "in any county in which the cause of action may arise".[4] The Supreme Court sustained the venue, saying:

"Both courts below found this to be in fact a consent on Wilson & Co.'s part to be sued in the courts of Oklahoma upon causes of action arising in that state. The Federal District Court, is, we hold, a court of Oklahoma within the scope of that consent, and for the reasons indicated in Neirbo v. Bethlehem, Wilson and 'Company * * * was amenable to suit in the Western District of Oklahoma." 309 U.S. at page 7, 60 S.Ct. at page 217, 84 L.Ed. 537.

It was not intended by this statement to hold or to suggest that a general designation such as the Texas statutes provide for would operate as a consent to be sued only upon causes of action arising in Texas.

Our case, Knobloch v. Kellogg, 5 Cir., 154 F.2d 45, 47, is not an authority for defendant's position. It is true that arguendo the court did say there that if the court should accept appellant's assumption that the corporation had qualified to do business under the Texas statute, Art. 2031a, it would in this hypothetical situation construe the statute as applying only to causes of action arising within the state or out of facts relating to business transacted there. These statements, however, as the opinion itself shows, were dicta not necessary to the decision of the case and not intended to have the force of a binding adjudication. For the opinion concludes:

"We have no factual basis for the implication of either consent or waiver. It is neither alleged nor proven that appellees obtained a permit to do business in Texas or designated a statutory agent for service in the state. There is no proof in the record as to the existence in Texas of any resident agent of either appellee. In short, the facts relied upon by appellant to sustain venue are too hypothetical to satisfy the law's requirements."

Here, on the contrary, it is established: that the defendant qualified under the Texas statute by designating an agent in exact accordance with its terms. The statute provides in Sec. 1:

"No foreign corporation shall transact or do any business in this State without first having filed in the office of the Secre-

3 Neirbo v. Bethlehem, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437; Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537.

4 Said the Circuit Court of Appeals: "The trial court found that prior to the commencement of the instant case the Delaware Company duly qualified as provided by the statutes of Oklahoma to do a local business as a foreign corporation in Oklahoma, and as provided by the statutes of Oklahoma duly filed a certificate designating an agent on whom process, issued in actions instituted in Oklahoma against the Delaware Company, might be served and consenting that actions might be brought against it in the county in which the cause arose. Such finding was not excepted to nor otherwise challenged below." Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 10 Cir., 100 F.2d 770, at page 773.

tary of State a power of attorney designating some individual who is a resident citizen of this State, as its service agent, upon whom process may be served *in all suits, proceedings and causes of action, pending or hereafter file in this State, in which said foreign corporation is a party or is to be made a party.*" (Emphasis supplied.)

Section 2 further provides that the power of attorney shall stipulate that the foreign corporation consents to the service of process upon the agent and that he shall be deemed as the service agent of the corporation for all intents and purposes. Nowhere in the statute is there any limitation upon the sweep and scope of the designation as a consent of the corporation to be sued in the state. The district judge was right in sustaining the venue as laid and in denying defendant's motion to dismiss for want of proper venue.

When it comes, however, to his order dismissing defendant's counter-claim, the matter stands quite differently. On its face, and as pleaded, the cross-complaint states a good cause of action. On its face, nothing appears to unfavorably affect or defeat it. In his oral opinion, the court, presumably upon judicial knowledge, for there is nothing about it in the pleading, declared: "Before the ending" [of the contract] "the O.P.A. died, having had a serious spell of illness along the latter part of June but the doctors fixed it up so that it lived until the first part of November". But whether, as appellee argues here, the court was of the view that since the O.P.A. "had been sick and had died", the contract had ceased to be effective for want of a measure of the price, is not made clear in the opinion. Indeed, just why the cross-complaint was dismissed is not made clear at all.

Appellee, however, argues the case here as though the sickness and death of the O.P.A. was the ground of the order and if not it ought to have been, and, so arguing it insists that the contract failed for want of a standard by which to determine or measure the price. But this will not at all do for in so arguing it overlooks that the counter-claim flatly and unequivocally alleged that the Office of Price Administration established a price for the whole of the year, and there is neither pleading nor proof to the contrary. Appellee's argument, based we suppose on presumed judicial knowledge, that, since the act which was in force when the contract was made provided that it would terminate on June 30, 1946, unless extended, and it did terminate, the contract became ineffective for want of a price standard. It unwarrantably disregards the renactment of the Act and the restoration of the O.P.A.

On the face of the counter-claim, and the motion to dismiss must be determined on its allegations, it must be taken as true: that the parties made a contract in the light of the official regulation of the O.P.A. of the price of paper; that, pursuant to that regulation, a definite standard of measurement was set and definite prices were fixed for the whole of the year 1946.

None of the authorities appellee cites are at all in point. Whatever may earlier have been the state of the law, it is now settled that a contract will be construed in favor of mutuality, and where it can reasonably be done it will be sustained against the defense of want of it.[5]

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

[5] American Refining Co. v. Staley, Tex. Civ.App., 274 S.W. 272; Texas Farm Bureau v. Stoval, 113 Tex. 273, 253 S. W. 1101; Luetkmeyer v. Murdock, 6 Cir., 267 F. 158; Buggs v. Ford Motor Co., 7 Cir., 113 F.2d 618; Dyal v. Wimbish, 5 Cir., 124 F.2d 464.