MANN FRANKFORT STEIN & LIPP ADVISORS, INC., MFSL GP, L.L.C., and MFSL Employee Investments, Ltd., Petitioners,

v.

Brendan J. FIELDING, Respondent.

No. 07–0490.

Supreme Court of Texas.

Argued Nov. 13, 2008.

Decided April 17, 2009.

Warren W. Harris, Laura B. Herring, Eden P. Sholeen and Jenny Reynolds Mohr, Bracewell & Giuliani, L.L.P., Houston, for Petitioners.

Levon G. Hovnatanian, William Jackson Wisdom, Jr., Bruce Edwin Ramage and Elizabeth Mata Kroger, Martin Disiere Jefferson & Wisdom L.L.P., Houston, for Respondent.

Justice JOHNSON delivered the opinion of the Court.

In this case we determine whether a covenant not to compete in an at-will employment agreement is enforceable when the employee expressly promises not to disclose confidential information, but the employer makes no express return promise to provide confidential information. We hold that if the nature of the employment for which the employee is hired will reasonably require the employer to provide confidential information to the employee for the employee to accomplish

the contemplated job duties, then the employer impliedly promises to provide confidential information and the covenant is enforceable so long as the other requirements of the Covenant Not to Compete Act are satisfied.

## I. Background

Mann Frankfort Stein & Lipp Advisors, Inc., MFSL GP, L.L.C., and MFSL Employee Investments, Ltd. (collectively "Mann Frankfort") is an accounting and consulting firm. It hired Brendan Fielding, a certified public accountant, on January 6, 1992. Fielding worked as a staff accountant in Mann Frankfort's Tax Department. He resigned in 1995 but was rehired later that year as a senior manager in the Tax Department. As a condition of Fielding's re-employment in 1995, Mann Frankfort required him to sign one of its standard at-will employment agreements. The agreement contained the following "client purchase provision":

10. If at any time within one (1) year after the termination or expiration hereof, Employee directly or indirectly performs accounting services for remuneration for any party who is a client of Employer during the term of this Agreement, Employee shall immediately purchase from Employer and Employer shall sell to employee that portion of Employer's business associated with each such client.

The agreement listed and defined the types of "business" Fielding would have to purchase from Mann Frankfort and set the purchase price. By executing the agreement, Fielding also promised he would "not disclose or use at any time ... any secret or confidential information or knowledge obtained by [Fielding] while employed...." In the course of his employment, Fielding also signed a limited partnership agreement that included a similar client purchase provision.

On January 19, 2004, Fielding again resigned from Mann Frankfort. Soon after he resigned, Fielding opened an accounting firm with David Hardy. Fielding[1] then filed a declaratory judgment action seeking to have the client purchase provisions in his employment and limited partnership agreements declared unenforceable pursuant to Texas Business and Commerce Code section 15.50(a), which states in part:

[A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Mann Frankfort answered and filed a counterclaim, asserting, among other matters, a breach of contract claim. Fielding filed a motion for partial summary judgment on the grounds that the client purchase provisions in his employment and limited partnership agreements were unenforceable covenants not to compete. Mann Frankfort filed a motion for partial summary judgment on the grounds that Fielding had breached the agreements, the client purchase provisions were not restrictive covenants, and even if they were, the provisions were nevertheless enforceable. The trial court granted Fielding's motion and denied that of Mann Frankfort.

After prevailing in the declaratory judgment action, Fielding sought attor-

1. Hardy and Darlene Plumly, both former Mann Frankfort employees, were parties to the trial court proceedings. They are not parties to this appeal.

ney's fees under both the Uniform Declaratory Judgments Act (UDJA), *see* TEX. CIV. PRAC. & REM.CODE § 37.009, and under his employment agreement. His employment agreement provided that the "prevailing party" in a suit between Mann Frankfort and Fielding was entitled to attorney's fees. The trial court refused to award Fielding attorney's fees under the UDJA. Fielding and Mann Frankfort filed competing motions for partial summary judgment on Fielding's entitlement to attorney's fees under his employment agreement. The trial court granted Mann Frankfort's motion and denied Fielding's. The court determined that Fielding's claim for attorney's fees under his employment agreement was preempted by Business and Commerce Code section 15.52, which states:

> The criteria for enforceability of a covenant not to compete provided by Section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise.

Fielding appealed the trial court's denial of his motion for attorney's fees. 263 S.W.3d 232, 238–39. Mann Frankfort cross-appealed, arguing that the client purchase provisions were enforceable. *Id.* at 239. The court of appeals held the client purchase provisions were unenforceable covenants not to compete. *Id.* at 245–50. The appeals court held that the client purchase agreement was not ancillary to or part of an "otherwise enforceable agreement" as required by the Covenant Not to Compete Act (the Act). *Id.* at 247; TEX. BUS. & COM.CODE § 15.50(a). The court held that Mann Frankfort failed to provide

any consideration because it made no promise to give Fielding access to confidential information. 263 S.W.3d at 247 (citing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644 (Tex.2006), and *Light v. Centel Cellular Co. of Tex.,* 883 S.W.2d 642 (Tex.1994)). The court of appeals reasoned that because Fielding never acknowledged that he had received or would receive confidential information and the employment agreement contained no representations that Fielding was to receive any consideration for agreeing to the client purchase or non-disclosure provisions, there was no implied promise on the part of Mann Frankfort to disclose confidential information. *Id.*

As to Fielding's entitlement to attorney's fees, the court of appeals determined that the trial court did not abuse its discretion in denying attorney's fees under the UDJA and did not reach the issue of whether the Act preempts an award of attorney's fees under the UDJA. *Id.* at 255 n. 8. The court did, however, hold that Fielding was entitled to attorney's fees under his employment agreement. *Id.* at 259. It held (1) the Act did not preempt Fielding's claim because the Act's preemption provision limits only actions to *enforce* covenants not to compete, not actions seeking to *prevent* enforcement, and (2) the unenforceable client purchase provision was severable from the remainder of the agreement. *Id.* at 256, 259; *see also* TEX. BUS. & COM.CODE § 15.52.

Here, Mann Frankfort contends (1) the client purchase provision in Fielding's employment agreement is enforceable because Mann Frankfort impliedly promised to provide confidential information; and (2) Fielding was not entitled to attorney's fees under his employment agreement because Business and Commerce Code section 15.52 preempts his claim and the

attorney's fees provision in Fielding's employment agreement was not severable from the remainder of the agreement.[2] We agree the client purchase provision is an enforceable covenant not to compete because (1) in a situation such as this— where the nature of the contemplated employment will reasonably require the employer to furnish the employee with confidential information—the employer impliedly promises to provide the information; and (2) the summary judgment evidence shows that Mann Frankfort provided such information to Fielding. Because of our conclusion, we do not reach the issue of whether Fielding is entitled to attorney's fees under his employment agreement.

## II. Standard of Review

■ We review a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 208 (Tex.2002). The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *see also Knott,* 128 S.W.3d at

216. When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). In such a situation, we render the judgment as the trial court should have rendered. *Id.*

## III. Enforceability of the Covenant Not to Compete

The relevant part of the Act provides:

[A] covenant not to compete is enforceable if it is *ancillary to or part of an otherwise enforceable agreement at the time the agreement is made* to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com.Code § 15.50(a) (emphasis added).

■ The enforceability of a covenant not to compete is a question of law. *Light v. Centel Cellular Co. of Tex.,* 883 S.W.2d 642, 644 (Tex.1994). The parties disagree whether the covenant not to compete in this case was "ancillary to or part of an otherwise enforceable agreement at the time the agreement [was] made." We addressed these requirements in *Light* and *Alex Sheshunoff Management Services,*

---

**2.** The parties have narrowed the issues in this appeal: (1) Mann Frankfort does not challenge the court of appeals' holding that the limited partnership agreement contains an unenforceable covenant not to compete; (2) Fielding does not challenge the reasonableness of the restrictions in the client purchase agreement; (3) Fielding does not challenge the court of appeals' determination that he was not entitled to attorney's fees under the UDJA, thus Mann Frankfort does not urge that an award of attorney's fees under the UDJA is preempted by the Act; and (4) Mann Frankfort no longer asserts its entitlement to attorney's fees.

*L.P. v. Johnson,* 209 S.W.3d 644 (Tex. 2006).

### A. *Light* and *Sheshunoff*

■ Two initial inquiries must be made when determining whether an enforceable covenant not to compete has been created under section 15.50:(1) is there an "otherwise enforceable agreement," and (2) was the covenant not to compete "ancillary to or part of" that agreement at the time the otherwise enforceable agreement was made. *Light,* 883 S.W.2d at 644. We held in *Light* that " 'otherwise enforceable agreements' can emanate from at-will employment so long as the consideration for any promise is not illusory." *Id.* at 645. In footnote six of the opinion, we explained that a unilateral contract could be formed if one promise is illusory and the return promise is non-illusory. *Id.* at 645 n. 6. We concluded, however, that a unilateral contract would not satisfy section 15.50:

> If only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance. . . . But such unilateral contract, since it could be accepted only by future performance, could not support a covenant not to compete inasmuch as it was not an "otherwise enforceable agreement at the time the agreement is made" as required by § 15.50.

*Id.* Thus, we said that although an "otherwise enforceable agreement" could be created in the form of a unilateral contract, it could not support a covenant not to compete under the Act because the unilateral contract would not have been formed "at the time the agreement is made." *Id.*

■ As to the second inquiry—whether the covenant was "ancillary to or part of" the otherwise enforceable agreement at the time the otherwise enforceable agreement was made—we have derived two requirements for making the determination. *Id.* at 647; *Sheshunoff,* 209 S.W.3d at 648–49. First, the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing. *Sheshunoff,* 209 S.W.3d at 648–49; *Light,* 883 S.W.2d at 647. Second, the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Sheshunoff,* 209 S.W.3d at 649; *Light,* 883 S.W.2d at 647. Unless both elements of the test are satisfied, the covenant is a naked restraint of trade and unenforceable. *Light,* 883 S.W.2d at 647.

In *Sheshunoff,* an employee signed an at-will employment agreement containing a covenant not to compete. 209 S.W.3d at 646. In the agreement, the employer promised to provide the employee access to confidential information and the employee promised not to disclose such information. *Id.* at 647. The employer then gave the employee access to confidential information throughout his employment. *Id.* We followed and confirmed our analysis in *Light,* with the exception of *Light's* footnote six. *Id.* at 650–51 ("[W]e disagree with footnote six insofar as it precludes a unilateral contract made enforceable by performance from ever complying with the Act because it was not enforceable at the time it was made."). We concluded that under section 15.50, a covenant not to compete is not invalid simply because the otherwise enforceable agreement to which the covenant is ancillary is not enforceable at the time the agreement is made. *Id.* at 651. Rather, the covenant not to compete need only be "ancillary to or part of" the agreement at the time the agreement is made. *Id.* Thus, the requirement that there be an "otherwise enforceable agreement" can be satisfied by the employer

actually performing its illusory promise to provide an employee with confidential information. *Id.* at 655.

## B. Implied Promise

This case differs from *Sheshunoff* because Mann Frankfort made no express promise to provide Fielding access to confidential information, although Fielding expressly promised not to disclose any confidential information. The court of appeals held, based on this lack of an express promise, that there was no "otherwise enforceable agreement." 263 S.W.3d at 247. Mann Frankfort claims it impliedly promised to provide Fielding confidential information during his employment. The court of appeals rejected this argument and held that in order for a promise to be implied in an "otherwise enforceable agreement," either (1) the employee must acknowledge that he or she had received or would receive confidential information, or (2) the agreement must contain a representation that the employee was receiving consideration in return for his or her promise. *Id.* at 247. We disagree. When the nature of the work the employee is hired to perform requires confidential information to be provided for the work to be performed by the employee, the employer impliedly promises confidential information will be provided.

▪ The difference between contracts formed through express promises and those formed through implied promises is the means by which the contracts are formed. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.,* 480 S.W.2d 607, 609 (Tex.1972) (stating that the terms of an express contract are recited by the parties, while an implied contract arises from the parties' acts and conduct); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. a (1981) ("The distinction ... lies merely in the mode of mani-

festing assent."). Regardless of whether a contract is based on express or implied promises, mutual assent must be present. *Haws,* 480 S.W.2d at 609. In the case of an implied contract, however, mutual assent is inferred from the circumstances. *Id.* As one treatise states the rule: "[t]erms are implied not because they are just or reasonable, but rather for the reason that the parties must have intended them and have only failed to express them ... or because they are necessary to give business efficacy to the contract as written." 2 JOSEPH M. PERILLO & HELEN HADJIYANNAKIS BENDER, CORBIN ON CONTRACTS § 5.27 (rev. ed. 1995); *see also* 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 31:7 (4th ed. 1999) ("[T]erms are to be implied in contract, not because they are reasonable, but because they are necessarily involved in the contractual relationship, such that the parties must have intended them and must have failed to express them only because of sheer inadvertence or because they are too obvious to need expression.").

▪ Furthermore, if one party makes an express promise that cannot reasonably be performed absent some type of performance by the other party, courts may imply a return promise so the dealings of the parties can be construed to mean something rather than nothing at all. *Portland Gasoline Co. v. Superior Mktg. Co.,* 150 Tex. 533, 243 S.W.2d 823, 824–25 (1951), *overruled on other grounds,* N. *Natural Gas Co. v. Conoco, Inc.,* 986 S.W.2d 603, 608 (Tex.1998). In *Portland,* we explained why mutual promises may be implied in this type of situation:

Mutuality may result from an implied obligation on the part of one of the parties. Though a contract on its face and by its express terms may appear to be obligatory on one party only, if it is manifest that it was the intention of the parties, and the consideration upon

which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such a corresponding and correlative obligation will be implied, and the contract held to be mutual,—as where the act to be done by the party expressly binding himself can only be done upon a corresponding act being done or allowed by the other party.

*Id.* at 825. In other words, when it is clear that performance expressly promised by one party is such that it cannot be accomplished until a second party has first performed, the law will deem the second party to have impliedly promised to perform the necessary action.

### C. Application

■ The circumstances surrounding Fielding's employment indicate that his employment necessarily involved the provision of confidential information by Mann Frankfort before Fielding could perform the work he was hired to do. As a certified public accountant, Fielding was required to use the tax and financial information of Mann Frankfort's clients to complete their tax returns. In order for Fielding to perform his duties, Mann Frankfort gave him access to its client database, which contains clients' names, billing information, and pertinent tax and financial information. This was confidential information which Mann Frankfort was interested in keeping confidential. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 684 (Tex.1990) (stating that client lists are confidential information that may be protected by an agreement not to compete).

Mann Frankfort's summary judgment evidence shows it provided Fielding with confidential information either on his first

day of work in 1995 or shortly after. In his affidavit, Fielding claims he was not provided confidential information on his first day of work, but he does not dispute Mann Frankfort's assertion that by his second day he was working on client files. Fielding testified in his deposition that his supervisors provided him with confidential tax and financial information that had been given to Mann Frankfort by its clients. Moreover, prior to being rehired in 1995, Fielding worked for three years at Mann Frankfort and was given confidential information during that time. Thus, when Mann Frankfort rehired Fielding in 1995, it was clear that by the nature of his duties as a senior manager in the firm's Tax Department, Fielding would be required to have and use information confidential to the firm.

Additionally, Fielding could not have acted on his promise to refrain from disclosing confidential information unless Mann Frankfort provided him with it. *See Portland,* 243 S.W.2d at 825. Fielding expressly promised in his employment agreement to "not disclose or use at any time ... any secret or confidential information or knowledge obtained by [Fielding] while employed...." This promise, though, meant nothing without a correlative commitment by Mann Frankfort. *See id.* Neither party disputes that performing the function of a certified public accountant requires accessing and using confidential information and that Mann Frankfort actually provided Fielding with confidential information during his first employment with the firm. The summary judgment evidence shows conclusively that Mann Frankfort impliedly promised to supply confidential information to Fielding when the parties entered into the 1995 agreement.[3]

3. Fielding argues that Richard Stein, Mann    Frankfort's corporate representative, admit-

Mann Frankfort's implied promise to provide Fielding with confidential information when he was employed in 1995 was illusory because Mann Frankfort had the option of terminating Fielding's employment prior to giving him access to confidential information. *See Light*, 883 S.W.2d at 645. Nevertheless, the parties still formed an "otherwise enforceable agreement" as contemplated by section 15.50 when Mann Frankfort performed its illusory promise by actually providing confidential information. *See Sheshunoff*, 209 S.W.3d at 651 ("[A] unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the Act.").

As was noted, for a covenant not to compete to be "ancillary to or part of" an otherwise enforceable agreement under section 15.50, (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing, and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Id.* at 648–49; *Light*, 883 S.W.2d at 647. Here, Mann Frankfort's implied promise and its actual provision to Fielding of access to confidential information satisfied the first requirement because the promise and provision of confidential information generated Mann Frankfort's interest in preventing the disclosure of such information. *See Sheshunoff*, 209 S.W.3d at 648–49. In addition, Fielding's promise not to disclose any confidential information satisfied the second requirement because the client purchase provision was designed to hinder Fielding's ability to use the confidential information to compete against Mann

Frankfort. *Id.* at 649. Therefore, the client purchase provision was "ancillary to or part of" the otherwise enforceable agreement when the otherwise enforceable contract was made, and the client purchase provision is enforceable under the Act.

### IV. Attorney's Fees

■ Fielding's employment agreement contained the following provision regarding attorney's fees:

15. In the event of litigation between the parties hereto arising out of or connected with this Agreement, the prevailing party shall be entitled to recover all reasonable costs and expenses and all reasonable, actual attorney fees incurred by it or by him in the preparation for and conduct of such litigation.

The trial court and court of appeals determined the client purchase provision was unenforceable and Fielding was the "prevailing party." Because we hold the client purchase provision is enforceable, Fielding is not the prevailing party under the agreement and is not entitled to attorney's fees under it. We do not reach the issues of whether the Act preempts the agreement in regard to entitlement to attorney's fees or whether the client purchase provision was severable from the remainder of the agreement. *See* TEX. BUS. & COM.CODE § 15.52.

### V. Conclusion

The client purchase provision in the 1995 employment agreement is enforceable. *See id.* § 15.50(a). We reverse the court of appeals' judgment and render judgment that Fielding take nothing.

Justice HECHT filed a concurring opinion.

---

ted Mann Frankfort made no enforceable promise to provide its employees confidential information. Stein's deposition testimony that Fielding refers to, however, concerned

Plumly's employment agreement. Additionally, Stein testified that, "as part of her employment, we did agree to give her confidential information."

Justice HECHT, concurring.

I join most of the Court's opinion with two additional observations.

## I

We granted the petition for review in this case for the same reason we granted the petition for review several years ago in *Gage Van Horn & Associates, Inc. v. Tatom:*[1] to consider whether the Texas Covenants Not to Compete Act[2] controls the award of attorney fees to an employee suing for a declaratory judgment construing a covenant not to complete when the employer is also suing to enforce the covenant. Our review of the record in *Tatom* revealed that the issue was not preserved, and we therefore withdrew the order granting the petition as having been improvidently granted. The issue is preserved in the present case, but the Court does not reach it, concluding instead that the employee, Fielding, is not entitled to attorney fees on the only basis still asserted—a provision of his employment agreement allowing attorney fees for a prevailing party in litigation over the agreement. I would hold that even if the agreement

would allow Fielding attorney fees, the Act controls.

Section 15.52 of the Act states:

The criteria for enforceability of a covenant not to compete provided by Section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise.[3]

In *Tatom,* as in the present case, an employee sued for a declaration of his rights under a covenant not to compete he had given his former employer, and the employer sued to enforce the covenant.[4] In each case,[5] the trial court granted summary judgment holding the covenant unenforceable under section 15.50(a) of the Act.[6] The trial court in *Tatom* awarded the employee attorney fees, and the court of appeals affirmed.[7] The trial court in the present case did not award the employee

1. 87 S.W.3d 536 (Tex.2002) (per curiam) (order granting petition for review withdrawn as having been improvidently granted); *see also Perez v. Texas Disposal Sys., Inc.,* 103 S.W.3d 591, 592–594 (Tex.App.-San Antonio 2003, pet. denied) (holding that an employer is not entitled to recover attorney fees under Tex. Civ. Prac. & Rem.Code § 38.001, because the remedies provided by the Covenants Not to Compete Act are exclusive under Tex Bus. & Com.Code § 15.52) (after remand from *Texas Disposal Sys., Inc., v. Perez,* 80 S.W.3d 593 (Tex.2002) (per curiam)).

2. Tex. Bus. & Com.Code §§ 15.50–.52.

3. *Id.* § 15.52.

4. *Gage Van Horn & Assocs., Inc. v. Tatom,* 26 S.W.3d 730, 732 (Tex.App.-Eastland 2000), *pet. denied,* 87 S.W.3d 536 (Tex.2002) (per

curiam); *Hardy v. Mann Frankfort Stein & Lipp Advisors, Inc.,* 263 S.W.3d 232, 240 (Tex. App.-Houston [1st Dist.] 2007), *rev'd,* 289 S.W.3d 844, 2009 WL 1028051 (Tex.2009); *cf. Perez,* 103 S.W.3d at 592.

5. *Tatom,* 26 S.W.3d at 732; *Hardy,* 263 S.W.3d at 240.

6. Tex. Bus. & Com.Code § 15.50(a) ("[A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.").

7. *Tatom,* 26 S.W.3d at 732, 734.

attorney fees, but the court of appeals did.[8] In each case, the court of appeals held that suit by an employee for a declaratory judgment construing a covenant not to compete is not an action to enforce the covenant to which section 15.52 applies.[9]

When the declaratory judgment raises only issues related to the covenant's enforceability, the court of appeals' construction of section 15.52 is clearly wrong. The statute preempts the enforceability requirements, procedures, and remedies afforded by any other law with respect to covenants not to compete. An employee's suit for a declaration of rights as they pertain to enforcement of a covenant (they almost always do) and an employer's suit for breach are opposite sides of the same coin. To apply one law to the employee's claims and a different law to the employer's would often be impossible. For example, although the basic standards for enforcement are the same under the Act as under the common law,[10] the Act imposes special requirements when the employee is

8. *Hardy*, 263 S.W.3d at 241, 259.

9. *Tatom*, 26 S.W.3d at 733 ("[T]he procedures and remedies set forth in the Covenants Not To Compete Act have preemptive effect only in an action to enforce a covenant not to compete. The declaratory judgment action filed by Tatom, which was the first claim filed in this matter and the claim on which summary judgment was granted, was not and could not be an action to enforce a covenant. By the plain language of the Act, the procedures and remedies, including attorney's fees, set forth in section 15.51 of the Covenants Not To Compete Act had no preemptive effect on Tatom's declaratory judgment action." (footnote omitted)); *Hardy*, 263 S.W.3d at 255–256 (following *Tatom*); *see also Contemporary Contractors, Inc. v. Strauser*, No. 05–04–00478–CV, 2005 WL 1774983, at *2, 2005 Tex.App. LEXIS 5868, at *7 (Tex.App.-Dallas July 28, 2005, no pet.) (mem.op.) (following *Tatom*).

10. *Compare* Tex. Bus. & Com.Code § 15.50(a), quoted *supra* note 6, *with DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681–682 (Tex. 1990) ("The fundamental common law principles which govern the enforceability of covenants not to compete in Texas are relatively well established. An agreement not to compete is in restraint of trade and therefore unenforceable on grounds of public policy unless it is reasonable. An agreement not to compete is not a reasonable restraint of trade unless it meets each of three criteria. First, the agreement not to compete must be ancillary to an otherwise valid transaction or relationship. Such a restraint on competition is unreasonable unless it is part of and subsidiary to an otherwise valid transaction or relationship which gives rise to an interest worthy of protection. Such transactions or relationships include the purchase and sale of a business, and employment relationships. Second, the restraint created by the agreement not to compete must not be greater than necessary to protect the promisee's legitimate interest. Examples of legitimate, protectable interests include business goodwill, trade secrets, and other confidential or proprietary information. The extent of the agreement not to compete must accordingly be limited appropriately as to time, territory, and type of activity. An agreement not to compete which is not appropriately limited may be modified and enforced by a court of equity to the extent necessary to protect the promisee's legitimate interest, but may not be enforced by a court of law. Third, the promisee's need for the protection afforded by the agreement not to compete must not be outweighed by either the hardship to the promisor or any injury likely to the public. Before an agreement not to compete will be enforced, its benefits must be balanced against its burdens, both to the promisor and the public. Thus, such an agreement may, in a particular case, accomplish the salutary purpose of encouraging an employer to share confidential, proprietary information with an employee in furtherance of their common purpose, but must not also take unfair advantage of the disparity of bargaining power between them or too severely impair the employee's personal freedom and economic mobility. Whether an agreement not to compete is a reasonable restraint of trade is a question of law for the court." (citations and footnotes omitted)).

a physician licensed in Texas.[11] It would be impossible—or at least nonsense—to declare that, under the common law, the covenant limited the physician's right to compete with his former employer, while at the same time holding that, under the Act, the covenant was unenforceable. The common law and the Act could not both control the same issues without direct conflict.

There are other differences between the Act and the common law. The Act allocates the burden of persuasion in a case differently depending on whether the employment is primarily for rendition of personal services,[12] precludes a damages award for conduct prior to any necessary reformation of the scope of the covenant,[13] limits attorney fees awards to employers,[14] and does not provide for attorney fees

11. TEX. BUS. & COM.CODE § 15.50(b) ("A covenant not to compete is enforceable against a person licensed as a physician by the Texas State Board of Medical Examiners if such covenant complies with the following requirements: (1) the covenant must: (A) not deny the physician access to a list of his patients whom he had seen or treated within one year of termination of the contract or employment; (B) provide access to medical records of the physician's patients upon authorization of the patient and any copies of medical records for a reasonable fee as established by the Texas State Board of Medical Examiners under Section 159.008, Occupations Code; and (C) provide that any access to a list of patients or to patients' medical records after termination of the contract or employment shall not require such list or records to be provided in a format different than that by which such records are maintained except by mutual consent of the parties to the contract; (2) the covenant must provide for a buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties; and (3) the covenant must provide that the physician will not be prohibited from providing continuing care and treatment to a specific patient or patients during the course of an acute illness even after the contract or employment has been terminated.").

12. *Id.* § 15.51(b) ("If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, for a term or at will, the promisee has the burden of establishing that the covenant meets the criteria specified by Section 15.50 of this code. If the agreement has a different primary purpose, the promisor has the burden of establishing that the covenant does not meet those criteria. For the

purposes of this subsection, the 'burden of establishing' a fact means the burden of persuading the triers of fact that the existence of the fact is more probable than its nonexistence.").

13. *Id.* § 15.51(c) ("If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief.").

14. *Id.* ("If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including

awards to employees. The common law does not draw all of these distinctions. It would be inconsistent to declare under the common law that a covenant entitled an employer to damages or injunctive relief while denying such relief under the Act, or to declare that an employee was entitled to attorney fees that the Act would preempt.

The courts of appeals in this case and *Tatom* did not refuse to apply section 15.52's preemption because the declaratory judgment actions raised issues beyond enforcement of the covenants not to compete and therefore beyond the Act's scope. They refused to apply the statute simply because in each case the employee's action was for declaratory relief and therefore not "an action to enforce a covenant". But while the employees certainly sought to avoid enforcement, they were not the only parties to the actions. The employers sought enforcement. As a whole, the actions were to enforce, or not, covenants not to compete. I would hold that section

15.52 applied to the actions and to the employees' claims for attorney fees.

## II

My second observation is this: in cases involving the enforceability of covenants not to compete, a shift in focus away from the reasonableness of the covenant's time, territory, and conduct restrictions toward issues of contract formation increases the risk that achieving what must in the end be an equitable result will cause a court to distort, confuse, or misstate contract law. Texas law has long been that unreasonable restrictions do not void a covenant not to compete but limit its enforcement.[15] Section 15.51(c) specifically requires a trial court to reform unreasonable restrictions.[16] In determining whether and how to enforce a covenant not to compete, a court must seek equity in reformation, not in the statement and application of general contract principles. The enforcement vehicle must be directed by steering, not by rebuilding the chassis.

reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.").

**15.** *Justin Belt Co. v. Yost*, 502 S.W.2d 681, 685 (Tex.1973) ("[I]t can no longer be said that a covenant not to compete is void and unenforceable simply because it is not reasonably limited as to either time or area, and that a court of equity will nevertheless enforce the contract by granting an injunction restraining competition for a time and within an area that are reasonable under the circumstances."); *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 952 (1960) ("[A]lthough the territory or period stipulated by the parties may be unreasonable, a court of equity will nevertheless enforce the contract by granting an injunction restraining the defendant from competing for a time and within an area that are reasonable under the circumstances."); *Spinks v. Riebold*, 310 S.W.2d 668, 669 (Tex.Civ.App.-El Paso 1958, writ ref'd) ("[C]ontracts of employment containing restrictive covenants ... will not be declared void because said cove-

nants are unreasonable as to time, or as to the extent of territory covered, or unreasonable as to both time and territory.... [This is] not making a new and different contract for the parties, but ... it would hardly be doing violence to the established principles to hold that the restriction is merely void or unenforceable with respect to that portion of the time beyond what the court considers reasonable." (internal quotation marks omitted)); *Lewis v. Krueger, Hutchinson & Overton Clinic*, 153 Tex. 363, 269 S.W.2d 798, 799 (1954) ("Merely because a limit has not been fixed for the duration of the restraint, the agreement will not be struck down but will be enforceable for such period of time as would appear to be reasonable under the circumstances."); *see also City Ice Delivery Co. v. Evans*, 275 S.W. 87, 90 (Tex.Civ.App.-Dallas 1925, no writ) (concluding that the trial court, instead of dissolving a temporary injunction, should have limited it to only the district assigned to the employee).

**16.** Tex. Bus. & Com.Code § 15.51(c), quoted *supra* note 13.

*Light v. Centel Cellular Co. of Texas* [17] is a case in point. A concern in *Light* was that while an at-will employee could be held to a covenant not to compete, the employer should not be allowed to take advantage of the employee by requiring her to sign a broad covenant not to compete, terminating her soon afterward, and then enforcing the covenant as written.[18] The simple answer is that the court cannot enforce the restrictions beyond the limits reasonable to protect the employer's interest—in the example, perhaps not at all. Rather than focus on the reasonableness of the restrictions in *Light*, the Court concluded that a covenant is not enforceable at the time it is made if the only consideration given by the employer is a promise to provide training and confidential information in the future that is illusory because it is contingent on continued employment.[19] We have since withdrawn from that conclusion and held that a covenant not to compete must only be ancillary to another agreement at the time that agreement was made, even if that agreement is not yet enforceable because the promise of future action has not been performed.[20] Today we withdraw further and hold that the promise of future action need not be express but may be implied.[21]

The Court's estrangement from *Light* has not been over its result—its handling of the covenant not to compete—but over its seriously flawed statement of contract law. It is certainly true, as the *Restatement (Second) of Contracts* explains: "Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise." [22] Such a "promise"—in reality no promise at all—is often said to be "illusory" and "is not consideration for a return promise." [23] Employment at will can be terminated by the employer or the employee at any time and for any reason; continuation of the employment relationship is entirely optional for each.[24] Thus, as we said in *Light*, "[a]ny promise made by either employer or employee that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor." [25]

What the Court should have added in *Light* is that courts have long been reluctant to invalidate a contract because a promise given in consideration was technically illusory. When the only consideration one party gives for a contract is a promise that is illusory, there is no "mutuality of obligation", sometimes said (though not entirely accurately) to be required for

---

17. 883 S.W.2d 642 (Tex.1994).

18. *Id.* at 646.

19. *Id.* at 644–645.

20. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson* 209 S.W.3d 644, 651 (Tex.2006).

21. *See ante* at 850.

22. Restatement (Second) of Contracts § 2 cmt. e (1981).

23. *Id.* § 77 cmt. a ("Where the apparent assurance of performance is illusory, it is not consideration for a return promise.").

24. *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993) (per curiam) ("The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary.") (citing *Schroeder v. Texas Iron Works,* 813 S.W.2d 483, 489 (Tex.1991), and *East Line & R.R.R. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888)).

25. 883 S.W.2d at 645 n. 5 (citing E. Allan Farnsworth, Contracts 72–82 (1982)).

a contract.[26] Thirty-five years ago, in *Texas Gas Utilities Co. v. Barrett*, we wrote:

> It is presumed that when parties make an agreement they intend it to be effectual, not nugatory. *Portland Gasoline Co. v. Superior Marketing Co., Inc.*, 150 Tex. 533, 243 S.W.2d 823 (1951). A contract will be construed in favor of mutuality, *Carpenter Paper Co. v. Calcasieu Paper Co., Inc.*, 164 F.2d 653 (5th Cir.1947). The modern decisional tendency is against lending the aid of courts to defeat contracts on technical grounds of want of mutuality. *Armstrong v. Southern Production Co., Inc.*, 182 F.2d 238 (5th Cir.1950).[27]

To avoid invalidating a contract, section 77 of the *Restatement (Second) of Contracts* explains:

> Illusory and Alternative Promises
>
> A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances unless
>
> * * *
>
> (b) one of the alternative performances would have been consideration and there is or appears to the parties to be a substantial possibility that before the promisor exercises his choice events may eliminate the alternatives which would not have been consideration.[28]

The same principles should be employed in construing and applying the Act, the purpose of which, after all, is to facilitate, not impede, enforcement of covenants not to compete. The parties to an employment agreement are presumed to have intended it to be effectual, and the agreement should not be denied enforceability on technical grounds of want of mutuality if that result can be avoided. The Act does not ground the enforceability of a covenant not to compete on the overly technical disputes that *Light* seems to have engendered over whether a covenant is ancillary to an otherwise enforceable agreement. Rather, the statute's core inquiry is whether the covenant "contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee".[29] Concerns that have driven disputes over whether a covenant is ancillary to an otherwise enforceable agreement—such as the amount of information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received—are better addressed in determining whether and to what extent a restraint on competition is justified.

There will certainly be covenant not to compete cases with important issues of contract formation, but the central concern will usually be the reasonableness of the

---

**26.** *Compare, e.g., Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 (Tex.1997) ("A contract must be based upon a valid consideration, in other words, mutuality of obligation."), *with* RESTATEMENT (SECOND) OF CONTRACTS § 79 (1981) ("If the requirement of consideration is met, there is no additional requirement of (a) a gain, advantage, or benefit to the promisor or a loss, disadvantage, or detriment to the promise; or (b) equivalence in the values exchanged; or (c) 'mutuality of obligation.' ") *and id.* cmt. a (" '[M]utuality of

obligation' has been said to be essential to a contract. But experience has shown that [this is not an] essential element[ ] of a bargain or of an enforceable contract. . . . ").

**27.** 460 S.W.2d 409, 412 (Tex.1970).

**28.** RESTATEMENT (SECOND) OF CONTRACTS § 77 (1981).

**29.** TEX. BUS. & COM.CODE § 15.51(c).

restrictions. *Light* should not divert attention from the central focus of the Act.