

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00095-CV
_____

EDWIN BRYANT WADE, JANET LYNN WADE, AND JEREMY WADE, Appellants

V.

MCLANE COMPANY, INC., AND JOSE EFRAIN PEREZ, JR., Appellees

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CV-23-46149

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

On March 3, 2021, while allegedly within the course and scope of his employment with McLane Company, Inc., Jose Efrain Perez, Jr., drove his truck into the back of a motor vehicle occupied by Edwin Byrant Wade, Janet Lynn Wade, and Jeremy Wade. On March 1, 2023, the Wades sued McLane and Perez for negligence and personal injuries sustained during the collision. Because the Wades did not accomplish service of process until August 2023, McLane and Perez filed a traditional motion for summary judgment based on their statute of limitations defense. After determining that the Wades failed to exercise due diligence in ensuring timely service of process, the trial court granted summary judgment and dismissed the Wades' claims, with prejudice.

On appeal, the Wades argue that the trial court erred by granting summary judgment. We find that the summary judgment was proper because the Wades failed to establish due diligence in effectuating service. Consequently, we affirm the trial court's judgment.

## I.    Service Caselaw and Standard of Review

"A plaintiff timely brings suit by filing an original petition *and* serving the defendant with process *before* the statute of limitations expires." *Tex. State Univ. v. Tanner*, 689 S.W.3d 292, 296 (Tex. 2024) (emphasis added). However, service of process completed after the expiration of limitations "*can* relate back to the date the petition was filed and thus be considered timely." *Id.* (emphasis added). "[C]an," but does not always: "[t]his relation-back opportunity is available only if the plaintiff[s] show[] that [they] [were] diligent in attempting service from the time limitations expired until proper service was finally achieved." *Id.* "Diligence in

2

attempting service prevents the running of limitations for as long as a plaintiff truly labors to achieve service of process." *Id.* at 298. "[D]iligence is merely a means to the end of establishing timely service, the absence of which can doom a plaintiff's claim." *Id.* In other words, "it is always *service* that matters. Diligence has no separate role other than to inform the assessment of service." *Id.* at 299.

The judiciary, via the common law, created the opportunity for diligent post-limitations service to relate back to a timely filed petition. *Id.* at 298. The circumstances of service can vary widely. Sometimes there are delays due to factors beyond a plaintiff's control, such as when a defendant dodges service. *Id.* at 299. Consequently, the common law has recognized that "[i]t would be unduly harsh and create perverse incentives to deem a lawsuit untimely if a plaintiff does everything she can to properly serve a defendant when, purposefully or otherwise, the defendant or third parties make that service extremely difficult." *Id.* On the other hand, when circumstances are under the plaintiff's control, the courts view things differently: "the easier it is to achieve service, the harder it will be for a plaintiff to establish diligence during a substantial (or even minor) delay." *Id.* "[W]hile the time period is important, it is not necessarily determinative of the question of diligence." *Ashley v. Hawkins*, 293 S.W.3d 175, 181 (Tex. 2009). "[D]iligence means truly trying to achieve service—as if one *wanted* to do it, not merely *had* to do it." *Tanner*, 689 S.W.3d at 299.

Though *Tanner* is the Texas Supreme Court's most recent enunciation of these principles, they have long been part of Texas law. *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007)

3

(per curiam) ("[A] timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation.").

The assessment of diligence is a "fact-intensive inquiry." *Tanner*, 689 S.W.3d at 299. "Diligence normally raises a fact question, but a plaintiff's explanation may show a lack of diligence as a matter of law 'when one or more lapses between service efforts are unexplained or patently unreasonable.'" *Id.* at 302 (quoting *Proulx*, 235 S.W.3d at 216).

In the trial court, diligence is litigated via a three-step process with shifting burdens. In the first step, the defendant asserts a limitations defense (typically via a summary judgment motion) and shows that service occurred after limitations expired. *Proulx*, 235 S.W.3d at 216. If that is done, the process then moves to the second step, where "it is the plaintiff's burden to present evidence regarding the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay." *Id.* At this step, "the plaintiff's explanation of its service efforts may demonstrate a lack of due diligence as a matter of law, as when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.* Or, as this Court has put it, "this is not an area where any sort of excuse at all will suffice." *Waggoner v. Sims*, 401 S.W.3d 402, 404 (Tex. App.—Texarkana 2013, no pet.). If the plaintiff raises a fact question on the second step, then the process moves on to the third step, where the defendant once again has the burden "to conclusively show why, as a matter of law, the explanation is insufficient." *Proulx*, 235 S.W.3d at 216.

On appeal, we review de novo the trial court's grant of summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Hearne v.*

4

*Riversource Life Ins. Co.*, 670 S.W.3d 360, 364 (Tex. App.—Texarkana 2023, pet. denied). Just as a trial court would do when faced with a summary judgment motion, we "view[] the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable [fact-finders] could, and disregarding contrary evidence unless reasonable [fact-finders] could not." *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019) (citing *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848).

## II.     Factual Background and the Summary Judgment Evidence

The Wades filed their petition on March 1, two days before the expiration of the statute of limitations on March 3, 2023. The petition requested "that such citation be prepared, issued forthwith and this office b[e] notified once same is ready to be picked up so that private process service may be arranged." The district clerk emailed citations for McLane and Perez on March 2, 2023, to the Wades' attorney's paralegal.

After the petition was filed and the statute of limitations expired two days later, no pleading was filed in the case until September 15, 2023, when McLane and Perez filed separate answers, each raising the statute of limitations defense. Based on that defense, McLane and Perez also filed a joint traditional motion for summary judgment. In support of that motion, McLane attached an affidavit from the Wades' process server, Donna Jo King, showing that she received the Wades' petition on August 25, 2023, and delivered it to McLane on August 28. Likewise, Perez showed that King received the Wades' petition on August 25 and delivered it to Perez on August 30.

5

In response to the summary judgment motion, the Wades agreed that service was not perfected on McLane and Perez until August 28 and 30, respectively, which was at least five months after the March 3, 2023, limitations deadline. Even so, the Wades argued that they met due diligence requirements. In support, they attached the affidavit of Heather Michelle Taylor, a litigation paralegal working under the supervision of the Wades' attorney, Ashley Cedillo.

Taylor's affidavit stated that, after filing the Wades' petition, a month passed before she noticed, on April 3, that neither she nor Cedillo had received the citations. Taylor called the Fannin County District Clerk's Office and was told that the citations were promptly emailed to their office on March 2. The petition contained the following email addresses for the Wades' counsel and her paralegal, "acedillo@loncarlyonjenkins.com (e-service)" and htaylor@loncarlyonjenkins.com[ ](e-service). Taylor's affidavit said, "Ms. Nicola Wright emailed the citations only to me . . . and not the attorney of record, Ashley Cedillo," and that the email had gotten stuck in a "junk email box." On April 13, Taylor forwarded the citations and the Wades' petition via email to Elizabeth Maxwell, the owner of a process service company new to both Taylor and Cedillo. In the email, Taylor wrote that their office was willing to work with Maxwell "on a trial basis" because she promised to accept a lesser fee for serving process than her competitors. Maxwell responded on April 19 "and indicated that she would get it to one of the process servers she worked with in that area and [would] let [Taylor] know when service was done."

Approximately one month passed without any update. On May 18, Taylor asked Maxwell about the status of the service. According to Taylor, Maxwell responded on May 23 by

saying that the server assigned to the case was sick and that she would soon obtain an update. On June 6, Taylor asked Maxwell for an update and, after receiving no update, emailed on June 28 and July 5 after Maxwell's failure to reply. Yet again, approximately one month passed without an update from Maxwell.

On July 6, Maxwell responded by saying that service had still not been accomplished and asked for two more weeks to complete the task. Taylor sent her final three emails asking for updates from Maxwell on July 26, August 1, and August 7. On August 16, 2023, Taylor hired another process service company but was informed on August 23 that the company was going to disregard the service request for lack of payment. On August 24, Taylor hired a third process server who quickly effectuated service on McLane and Perez.

At the summary judgment hearing, McLane and Perez argued that there was no evidence of the steps Maxwell took to serve them, no evidence that there was any attempt to serve via certified mail, and no evidence that the addresses in the original petition were incorrect. In announcing its ruling, the trial court referred to Maxwell's process service company and stated that it "was not reasonable to keep waiting on them and waiting on them." As a result, the trial court granted summary judgment in favor of McLane and Perez. The trial court's docket clarified that "the 4 months reliance on 1st process server, with no meaningful feedback [wa]s [the] basis of the ruling."

## III.     The Trial Court's Summary Judgment Was Proper

On March 2, 2023, the district clerk of Fannin County issued citation for McLane, listing a Dallas address for McLane's registered agent for service of process. The same day, the district

7

clerk issued citation for Perez, listing an address in Fort Worth. On August 28 and 30, McLane and then Perez were served at the same addresses shown on their respective citations.

Whatever else may be said about this record, one thing is absent: evidence of any *actual attempt at service* between early March and late August. During that time, no one took the citations and went knocking on McLane's and Perez's doors. Once someone actually put wheels on the road and feet on the ground with suit papers in hand, service happened quickly.

Likewise, there is no evidence of any attempt at service by other means,[1] which means this is *not* a case of McLane or Perez ducking service.

The Wades argue that part of the delay was due to an email mix-up between Cedillo, Taylor, and the district clerk's office. But in attempting to shift fault onto the district clerk, the Wades admitted that they let a month go by before the April 3 call to the district clerk to check on the citations.[2]

Thereafter, every difficulty in making service happen was solely within the Wades' control via their attorney, the attorney's assistant,[3] and the process servers they hired.[4]

---

[1]McLane and Perez assert that they could have been served by registered mail. *See* TEX. R. CIV. P. 106(a)(2); *Ferrer v. Almanza*, 667 S.W.3d 735, 742 (Tex. 2023). There is nothing in the record to refute that.

[2]"The party requesting the citation, not the clerk, is responsible for obtaining service." *Butler v. Skegrud*, No. 02-14-00168-CV, 2015 WL 4148474, at *5 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.) (citing TEX. R. CIV. P. 99(a)); *see Jennings v. H.E. Butt Grocery Co.*, No. 04-97-00266-CV, 1998 WL 88625, at *2 (Tex. App.—San Antonio Mar. 4, 1998, pet. denied) (citing *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 590 (Tex. App.—Corpus Christi–Edinburg 1994, no writ)). "This responsibility 'extends to seeing that service is properly reflected in the record.'" *Jennings*, 1998 WL 88625, at *2 (quoting *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994) (per curiam)).

[3]"[I]t is ultimately the attorney—not her legal assistant—who is responsible for ensuring timely service." *Alonzo v. Fort Worth Land & Cattle Co.*, No. 02-23-00053-CV, 2023 WL 4501827, at *3 n.5 (Tex. App.—Fort Worth July 13, 2023, no. pet.) (mem. op.).

At step two of the process, the plaintiff has the burden "to explain every lapse in effort or period of delay." *Proulx*, 235 S.W.3d at 216. In this case, almost five months passed after the expiration of limitations without service on McLane and Perez. As this Court noted in 2013, "Texas courts have consistently held that unexplained delays of five and six months in procuring issuance and service of citation constitute a lack of due diligence as a matter of law." *Waggoner*, 401 S.W.3d at 406. The Wades presented evidence of what happened, but the evidence presented is of the sort that has been previously found to show a lack of diligence. This includes Cedillo's reliance on Taylor.[5] This further includes the months-long reliance of Cedillo and Taylor on unfamiliar or unresponsive process servers.

In sum, under the de novo standard of review, we accept the Wades' account of what happened, but even viewing the evidence in the light most favorable to the Wades, a reasonable fact-finder could not credit what happened as diligence. Further, we cannot disregard the uncontradicted evidence that, once service was actually attempted, it was easily accomplished.

---

[4]"[M]isplaced reliance on the process server does not constitute due diligence," because it is not the responsibility of the process server to see that service is properly accomplished. *Taylor v. Thompson*, 4 S.W.3d 63, 65 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *see Franklin v. Longview Med. Ctr., L.P.*, No. 12-18-00198-CV, 2019 WL 2459020, at *4–5 (Tex. App.—Tyler June 5, 2019, pet. denied) (mem. op.) (citing *Roberts v. Padre Island Brewing Co.*, 28 S.W.3d 618, 621 (Tex. App.—Corpus Christi–Edinburg 2000, pet. denied); *Gonzalez*, 884 S.W.2d at 589–90); *Jennings*, 1998 WL 88625, at *3. As a result, "[a]ny deficiency in a process server's performance is imputed to the responsible party." *Jennings*, 1998 WL 88625, at *2. "Mere reliance on a process server and a delay of five months after expiration of the statute of limitations 'do not, as a matter of law, constitute due diligence in procuring issuance and service of citation.'" *Id.* (quoting *Gonzalez*, 884 S.W.2d at 590).

[5]"[M]ere reliance upon an employee to ensure service of citation is not due diligence as a matter of law because this reliance is 'patently unreasonable.'" *Villanueva v. McCash Enters., Inc.*, No. 03-13-00055-CV, 2013 WL 4487520, at *3 (Tex. App.—Austin Aug. 15, 2013, no pet.) (mem. op.) (citing *Campbell v. Abrazo Adoption Assocs.*, No. 04-09-00827-CV, 2010 WL 2679990, at *5 (Tex. App.—San Antonio July 7, 2010, pet. denied) (mem. op.) (holding that failure of an attorney's staff to effectuate service is not due diligence as a matter of law)). Here, Cedillo left that responsibility to Taylor, even after discovering that the citations had been stuck in Taylor's junk email for a month after limitations expired, but "[a] prudent person upon discovering that service had not been effected would have acted with all haste to ensure that the citation was promptly served thereafter." *Villanueva*, 2013 WL 4487520, at *3.

*See Tanner*, 689 S.W.3d at 299 ("[T]he easier it is to achieve service, the harder it will be for a plaintiff to establish diligence during a substantial (or even minor) delay.").

## IV.      Disposition

We affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted:      July 5, 2024
Date Decided:        September 26, 2024

10