# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00332-CV

**Randy Dennis, Appellant**

**v.**

**Beacon Ridge Townhomes Condominium Association of Owners, Inc.**
**and Debra D. Mathis, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-09-004395, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Beacon Ridge Townhomes Condominium Regime (the "Regime") was formed when the Declaration of Beacon Ridge Townhomes Condominium Association (the "Declaration") was filed with Travis County. *See* Tex. Prop. Code § 82.051 (specifying manner in which condominiums may be formed). Under the terms of the Declaration, the Regime is governed by the Beacon Ridge Townhomes Condominium Association of Owners, Inc. (the "Association"). When the Declaration was filed, a portion of the property was subdivided into 24 units with each unit having a 1/24th interest in the remaining undivided common areas.

After the property had been subdivided but before any condominiums had been constructed, Randy Dennis purchased eight of the units, which were subject to the terms described in the Declaration. Subsequent to Dennis's purchase, the Association began sending Dennis assessments, which Dennis paid for months. When Dennis stopped paying the assessments, the

Association began charging him late penalties, and liens were imposed on the property by Debra Mathis who was acting on behalf of the Association as the property manager. Ultimately, Dennis elected to put his property up for sale and to file suit against the Association and Mathis. In his suit, Dennis challenged acts by the Association as well as Mathis; however, for ease of reading, we will generally refer to those parties jointly as the Association.

In his suit, Dennis challenged the assessments that the Association charged as well as the liens imposed on his property. In addition, Dennis asked the district court to declare that he was not obligated to pay any of the assessments and that the Association breached the terms of the Declaration by imposing the charges, to determine that the Association fraudulently imposed liens on his property, to order the Association to compensate him for the value of the money that he had previously paid to the Association for the imposed assessments as well as the value of a lost sale caused by the imposition of the liens, and to enter a judgment quieting title and removing the imposed liens. In response, the Association filed a counterclaim arguing that the assessments and fines were proper, seeking a declaration that Dennis was required to pay the assessments and fines, asking for a judgment for the assessments and fines owed by Dennis, and requesting authorization to foreclose on his property.

In addition to the various petitions filed by the parties, Dennis filed a traditional motion for summary judgment, and the Association filed a joint traditional and no-evidence motion for partial summary judgment. After reviewing the motions, the district court denied Dennis's motion but granted the Association's motion. In its judgment, the district court dismissed Dennis's claims, declared that Dennis is a member of the Association and is required to pay the assessments,

2

ordered Dennis to pay the imposed assessments and fines, and determined that the Association was entitled to foreclose on Dennis's property. On appeal, Dennis challenges the district court's rulings.

In two issues on appeal, Dennis contends that the district court erred by denying his motion for summary judgment and by granting the Association's motion. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (outlining standard for reviewing summary judgment rulings and explaining that when trial court grants one party's summary-judgment motion but denies motion filed by other party, appellate courts review all evidence, determine all presented issues, and render judgment that trial court should have).

Regarding his motion for summary judgment, Dennis argues that he proved as a matter of law that he was not obligated to pay any of the assessments or fines imposed by the Association and, accordingly, that he was entitled to summary judgment in his favor. When making this claim, Dennis acknowledges that the Declaration does allow for the imposition of assessments but notes that his units had not been constructed during the time that the Association imposed the assessments and then points to various parts of the Declaration as support for the idea that the Declaration only pertains to completed and fully constructed units. For example, he refers to the portion of the Declaration evidencing an intention to create a plan with individual ownership of apartment units, to the definition of "Unit" as "a physical portion of the condominium . . . for separate ownership and occupancy," and to the definition of "Condominium" as "the separate ownership of single units in a multiple-unit structure or structures with common elements." In light of the preceding and other portions of the Declaration, Dennis insists that none of those "provisions make sense if the Units are not built" and, therefore, that the Declaration only allows for assessments "to be imposed on owners of completed Units."

3

As a preliminary matter, we note that the terms of the deed specify that Dennis purchased eight units in the Regime. In other words, even though construction had not been completed, the property interest that Dennis sought and purchased from the previous owner was eight units.

Moreover, we note that in this issue Dennis is not challenging the manner in which the assessments were calculated and does not allege that the assessments were imposed for improper purposes. Instead, Dennis limits his challenge to the Association's ability to impose the assessments on an owner whose condominiums have not been constructed. Although Dennis correctly points out that the Declaration does not explicitly mention imposing assessments on owners of incomplete units, nothing in the Declaration expressly forbids their imposition either. More to the point, when various provisions of the Declaration are read together, they support the proposition that assessments may be imposed on an owner even if his unit has not been constructed. *See Gulf Shores Council of Co-Owners, Inc. v. Raul Cantu No. 3 Fam. Ltd. P'ship*, 985 S.W.2d 667, 670 (Tex. App.—Corpus Christi 1999, pet. denied) (applying rules of contract construction to condominium declaration).

First, the Declaration implies that an ownership interest may be purchased before construction is complete by specifying an intention to establish a plan "for the improvement" of the property and for ownership under which individuals will own units and that the units to be purchased and constructed are designated and defined by exhibits attached to the Declaration. In particular, the Declaration defines an "Owner" as "any person that owns a Unit within the Project" and specifies that a "Unit" is "a physical portion of the condominium designated by Exhibits B and C for separate ownership and occupancy," and the attached exhibits demonstrate the plans for proposed units that had not been built yet.

4

Second, the Declaration explains that in addition to owning their residential apartment units, owners also "each have an undivided interest in the" remainder of the property, which was designated as the Common Elements. Stated differently, even though the structures had not yet been constructed, Dennis acquired a property interest in the remainder of the property. Furthermore, other than the units and Common Elements, the Declaration provides for no other type of property ownership, and the Declaration explains that all of the restrictions and conditions specified are "binding on all parties" acquiring an interest in the Regime. In other words, the Declaration does not authorize the conveyance of any other type of property interest, meaning that Dennis could not have purchased anything other than units along with an undivided interest in the Common Elements. Consistent with that property structure, the terms of Dennis's deed specify that what he purchased was eight units along with "their appurtenant undivided interest in and to the . . . common elements."

Finally, the Declaration states that the Association is responsible for "[o]peration and maintenance of the Common Elements," including "exterior painting, maintenance, repair, and landscaping" and that the Association has all of the powers allowed by the Texas Uniform Condominium Act, including the power to "levy assessments against Owners" to fund its activities. *See* Tex. Prop. Code § 82.102(11) (empowering association to impose fees on owners for use of common elements and for services provided). Moreover, regarding assessments, the Declaration clarifies that by accepting the deed, each Owner agrees to pay "the regular and special assessments levied," that an "Owner may not waive or otherwise escape liability for these assessments by nonuse of the Common Elements or by abandonment of the Owner's Unit," and that the assessments

are "separate, distinct, and personal debt[s] and obligation[s] of the Owner against whom the assessments are assessed." By authorizing the Association to impose assessments on owners for the maintenance and operation of the Common Elements, particularly in light of the fact an owner may not waive his liability, the Declaration obligates individuals who purchase units to cover their portion of the expenses regardless of whether their units are fully constructed by the time that the assessment is imposed.

In addition to the fact that the terms of the Declaration seem to authorize the imposition of assessments in the circumstances present in this appeal, our construction of the Declaration is also consistent with a prior case from this Court that addressed a similar issue. *See Fairway Villas Venture v. Fairway Villas Condo. Ass'n*, 815 S.W.2d 912 (Tex. App.—Austin 1991, no writ). In that case, as in the present case, the condominium association imposed an assessment on the owner of undeveloped units, and the owner disputed the propriety of the assessment on the grounds that assessments may not be imposed on owners of incomplete units and that the governing framework only applies to fully constructed structures. *Id.* at 913-14. Ultimately, this Court determined that the provisions governing the imposition of assessments applies to owners of "existing and proposed apartments." *Id.* at 915.[1]

---

[1] We note that the decision in *Fairway Villas Venture v. Fairway Villas Condo. Ass'n*, 815 S.W.2d 912 (Tex. App.—Austin 1991, no writ), was based on the predecessor to the current Texas Uniform Condominium Act, *see* Tex. Prop. Code §§ 82.001-.164 (containing Texas Uniform Condominium Act), 81.001-.210 (comprising Texas Condominium Act, which applies to condominiums created before enactment of Texas Uniform Condominium Act). Further, we note that the pertinent definitions in the prior statute included both existing and proposed structures and that the current statutes do not expressly mention proposed structures. *Compare* Tex. Prop. Code § 81.002(2), *with id.* § 82.003. However, we believe that the analysis from the prior case is still relevant to the current issue in dispute.

For all of these reasons, we conclude that the district court did not err by denying Dennis's motion for summary judgment, and accordingly, we overrule Dennis's first issue on appeal.

In his second issue on appeal, Dennis urges that the district court erred when it granted the Association's motion for summary judgment and determined that he was obligated to pay the assessments and fines imposed by the Association.

In his brief, Dennis contends that his assertions from his prior issue apply equally to this issue and demonstrate that there is a material fact issue regarding whether the assessments could be levied against him given that his condominiums have not been constructed. Alternatively, Dennis contends that the Declaration is "ambiguous as to whether [it] allows the Association to impose assessments on owners of Units that have not yet been constructed." For the reasons set out in our resolution of the first issue, we conclude that the Declaration is not ambiguous and that the Declaration authorizes the imposition of assessments on owners even if their units have not been constructed.

In his second issue, Dennis also alleges that the district court erred when it granted the Association's motion for summary judgment because granting the motion improperly disposed of his claims for breach of contract, for money had and received, for the imposition of fraudulent liens, and for slander of title. The arguments Dennis makes on appeal as to why his claims should not have been dismissed are based on Dennis's assertion that the Declaration does not authorize the imposition of assessments on owners whose units have not been constructed. However, as discussed above, we have already concluded that the Declaration does allow for the imposition of that type of assessment.

7

In his final set of arguments in his last issue, Dennis asserts that the district court erred when it rendered summary judgment in favor of the Association and awarded it $50,080.00 as fines for late payments on the imposed assessments. As with his other contentions, Dennis is not challenging the manner in which the fines were calculated and instead insists that the Association did not have the authority to impose the fines. As support for this proposition, Dennis refers to the affidavit of Mathis in which she explained that Dennis was charged $10 per unit per day for each month that he failed to timely pay his assessments and that Dennis was charged after the Association complied with the notice requirements found in rule 14 of the Rules of Conduct for the Regime. When disputing the propriety of the imposition of the fines, Dennis argues that the rules of conduct do not govern the failure to pay assessments and that rule 14 does not expressly authorize the Association to impose fines for the failure to pay assessments and instead applies to complaints regarding the management of the condominium or regarding the actions of owners, sets out a four-step process for handling the complaints, and allows for the imposition of fines only for violations of the rules of conduct.

Although Dennis correctly points out that the rules of conduct do not directly mention fines for failing to timely pay assessments, the Declaration as well as the Texas Uniform Condominium Act do authorize the Association to impose assessments on owners as well as fines for failing to timely pay assessments and for other violations. *See* Tex. Prop. Code § 82.102(a)(11)-(12). Accordingly, the fact that the Association chose to follow the procedures set out in rule 14 when imposing fines for Dennis's failure to pay the imposed assessments would not seem to somehow divest the Association of the authority to impose the fines.

8

For all of these reasons, we conclude that the district court did not err when it granted the Association's motion for summary judgment, and therefore, we overrule Dennis's second issue on appeal.

Having overruled both of Dennis's issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   August 7, 2013

9