

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00260-CV

DFW INTERNATIONAL AIRPORT
BOARD

APPELLANT

V.

YSENIA BOYKIN

APPELLEE

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This is a premises liability suit. Appellee Ysenia Boykin, an employee of American Airlines, sued Appellant DFW International Airport Board[2] for negligence after she slipped and fell at DFW airport on August 19, 2009. DFW

---

[1]*See* Tex. R. App. P. 47.4.

[2]In its trial court pleadings and its notice of appeal, DFW refers to itself as "Dallas/Fort Worth International Airport Board ('DFW'), incorrectly named as DFW International Airport Board."

filed a motion for summary judgment challenging the trial court's jurisdiction on the ground that Boykin had failed to comply with the statutory notice provision in civil practice and remedies code section 101.101.[3] The trial court denied the motion, and DFW filed this accelerated interlocutory appeal.[4] Because we hold that the evidence did not establish that the trial court lacked jurisdiction, we affirm the trial court's order.

## Background

In her pleadings, Boykin alleged that the accident happened about 11:00 a.m. on August 19, 2009 as "she exited at Terminal D parking garage and proceeded across the pedestrian walkway towards Terminal D of the DFW Airport." Boykin described the circumstances of the accident, stating that as she "approached the bank of elevators, her feet slipped out from under her and she fell due to the unreasonably dangerous condition of the premises, specifically, a walkway covered with a slippery and oily substance."

Boykin alleged that DFW had knowledge of the condition and that the oily substance in the walkway was an unreasonable, dangerous condition. She also sued the maintenance company that she alleged was "contractually obligated to perform the maintenance and cleaning of the premises."

---

[3]Tex. Civ. Prac. & Rem. Code Ann. § 101.101 (West 2011).

[4]*Id.* § 51.014(a)(8) (West Supp. 2013).

DFW filed a motion for summary judgment. The motion included two grounds. One ground was that there was no evidence that DFW knew or should have known of the condition about which Boykin complained. The other ground, which is the focus of this appeal, challenged the trial court's jurisdiction based on lack of notice. DFW asserted that it is a unit of local government entitled to notice of a claim under civil practice and remedies code section 101.101(a) and that Boykin had failed to provide the required written notice of her claim within six months of the date of the incident.[5] It further asserted that it did not have actual notice of the claim under section 101.101(c).[6]

DFW stated that it did not receive written notice of the claim until it was served with Boykin's original petition on August 29, 2011. It attached to its motion an excerpt from Boykin's deposition in which she stated that she did not verbally report her fall to anyone at DFW and that she did not send a letter, memo, or e-mail to anyone at DFW. DFW further attached the affidavit of a claims manager for DFW, stating that DFW records showed no written notice from Boykin regarding Boykin's injury within six months of the accident.

Boykin filed a response to the motion. Regarding the notice ground, Boykin asserted that DFW had actual notice of her claim. She supported this assertion with deposition testimony and reports created by DFW employees.

---

[5] *Id.* § 101.101(a).

[6] *Id.* § 101.101(c).

The trial court denied the motion. DFW then filed this appeal arguing that the trial court erred by concluding that it had jurisdiction.

## Standard of Review

Whether undisputed jurisdictional evidence establishes a trial court's jurisdiction is a question of law that we review de novo.[7] But in some cases, disputed jurisdictional evidence creates a fact question to be resolved by the fact finder.[8]

A defendant may challenge the trial court's jurisdiction in a motion for summary judgment.[9] In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[10]

---

[7]*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[8]*Id.*

[9]*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

[10]Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Roskey v. Tex. Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex. 1982) (holding that the summary judgment movant asserting the lack of standing had the burden to prove that the plaintiffs did not have standing). *See also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (stating that in reviewing a plea to the jurisdiction, the defendant has the burden to show that the trial court lacks jurisdiction); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012) (stating that a trial court must grant a plea to the jurisdiction if the defendant presents undisputed evidence that negates the existence of the trial court's jurisdiction).

We review a summary judgment de novo,[11] considering the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[12]

## Analysis

DFW argues in one issue that the trial court erred by denying DFW's motion for summary judgment challenging the trial court's subject-matter jurisdiction when the evidence is undisputed that Boykin (1) failed to provide written notice to DFW of a claim within six months of the date of the incident as required by section 101.101(a) and (2) the evidence is undisputed that DFW did not have actual notice of a claim according to section 101.101(c).

*Statutory notice requirements for suits against the government*

The civil practice and remedies code requires a plaintiff to give a government unit written notice of a tort claim that the plaintiff intends to bring against the unit.[13] The notice must be given no later than "six months after the day that the incident giving rise to the claim occurred."[14] The statute also sets out what must be in the notice, providing that the notice "must reasonably

---

[11]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[12]*Mann Frankfort Stein*, 289 S.W.3d at 848; *Miranda*, 133 S.W.3d at 226 (using the same standard to review a plea to the jurisdiction).

[13]Tex. Civ. Prac. & Rem. Code Ann. § 101.101.

[14]*Id.* § 101.101(a).

5

describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident."[15]

The statute also states that the notice requirements "do not apply if the governmental unit has actual notice . . . that the claimant has received some injury."[16] Boykin acknowledges that she did not give formal written notice to DFW within six months of the date of her injury. But she contends that DFW had actual notice of her claim, and she was therefore not required to give the statutory notice. This appeal turns, then, on what constitutes actual notice and whether DFW met its burden to present undisputed evidence negating that it had actual notice.[17]

*What does actual notice require?*

The purpose of the notice statute is "to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial."[18] The Supreme Court of Texas has said that a governmental unit has notice that satisfies the purpose of the statute if it has

---

[15]*Id.*

[16]*Id.* § 101.101(c).

[17]*See Mann Frankfort Stein*, 289 S.W.3d at 848 ("The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law."); *Miranda*, 133 S.W.3d at 228 (setting out a similar rule for a governmental unit asserting a plea to the jurisdiction challenging the existence of jurisdictional facts).

[18]*Tex. Dep't. of Criminal Justice v. Simons*, 140 S.W.3d 338, 344 (Tex. 2004).

"knowledge that amounts to the same notice to which it is entitled by section 101.101(a)."[19] That means that the governmental unit must have the information required by section 101.101(a), including knowledge of the parties involved, as well as "subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury."[20]

The governmental unit does not have to know that the claimant has actually made an allegation of fault in order to have actual notice.[21] But "a governmental unit cannot acquire actual notice merely by conducting an investigation, or even by obtaining information that would reasonably suggest its culpability."[22] It must have actual, subjective awareness of its fault. "Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed."[23]

Whether the governmental unit has actual notice is a fact question when the evidence is disputed, but it can in many instances be determined as a matter of law.[24] In some instances, subjective awareness "must be proved, if at all, by

---

[19]*Id.* at 347.

[20]*Id.*; *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010).

[21]*Simons*, 140 S.W.3d at 347.

[22]*Id.* at 348.

[23]*Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010).

[24]*Simons*, 140 S.W.3d at 348.

circumstantial evidence."[25]  Thus, the evidence supporting jurisdiction can be something less than direct evidence of an explicit acknowledgement by DFW of its fault.  But the circumstantial evidence must show an actual consciousness by DFW of potential fault, not merely that DFW should have known of its fault.[26]

At trial, Boykin will have to prove that prior to her accident, DFW actually knew or, if she paid for use of the premises, that it should have known of the condition on the floor, giving rise to a duty to remedy or warn of the condition.[27]  But here, the evidence focuses on what DFW knew *after* the accident.  Because Boykin's complaint was that DFW controlled the premises and that it did not clean it up or warn her of it (rather than that DFW caused the spill), the evidence needs to show only that, after the accident, DFW became aware of its own potential fault for failing to clean up or warn of the condition.  The evidence need not show at this stage whether DFW caused the substance to be on the ground

---

[25] *Id.*

[26] *See id.*

[27] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (West 2011) (providing that in a premises liability claim against a governmental unit, the governmental unit "owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises"); *City of Dallas v. Patrick*, 347 S.W.3d 452, 457 (Tex. App.—Dallas 2011, no pet.) (explaining that when a plaintiff paid for use of the premises, then under the statute, the governmental unit owes the duty owed to an invitee); *see also Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (explaining that under a licensee standard, "a plaintiff must prove that the governmental unit had actual knowledge of a condition," whereas under an invitee standard, a plaintiff need only prove that the governmental unit should have known of the condition).

in the first place or whether it had knowledge of the condition prior to the accident.

*Did DFW present undisputed evidence negating actual notice?*

DFW does not contest its knowledge of most of the information required for actual notice, but it does dispute whether it had subjective awareness of fault. DFW asserts that the affidavit of Ed Holomon, attached to it its motion, shows that DFW did not have knowledge of its alleged fault in producing or contributing to Boykin's injuries. It argues that the reports and deposition testimony relied on by Boykin do not raise a fact issue because they show nothing more than that DFW employees knew of the incident, not that it knew of its fault in causing it.

Ed Holomon stated that he had been the senior claims manager in the risk management department since October 31, 2011. He asserted that the risk management department is the DFW department to which a written notice of claim should be sent and that "it is the sole department within DFW that is responsible for the investigation of a claim once written notice is received or in the event DFW obtains actual notice of a claim." Holomon stated that the department "has no record of notice, actual or otherwise, of . . . Boykin's claim until DFW was served with Plaintiff's Original Petition on or about August 29, 2011" and that the department "did not perform any investigation of the alleged incident involving . . . Boykin as it was not made aware of the claim until DFW was served" with the suit. Holomon then asserted the legal conclusions that the department "did not have knowledge of DFW's alleged fault in producing or

9

contributing to her alleged injury or the identity of the parties involved within six (6) months of the date" of the incident and that "[b]ecause the [department] did not have this information regarding [Boykin], it had no actual or subjective awareness of its alleged fault with respect to her claim."[28]

While this affidavit asserts that DFW received no notice of Boykin's *claim* and that it therefore did not investigate, it does not explicitly state or set out facts demonstrating that it did not receive notice that the incident occurred, a report about what happened, or information making it aware of its potential fault.[29] Thus, this affidavit does not establish as a matter of law that DFW did not receive information from which it could have determined its fault in producing Boykin's injury.

Boykin filed a response and attached as evidence an EMS report, a report from the DFW Transportation Department, an excerpt from a daily log generated by DFW's airport operations control (AOC) department, and excerpts from the depositions of DFW employees and an American Airlines employee. The DFW Airport EMS ambulance record stated the date and that Boykin had fallen, and it described her injuries. In the narrative section of the report, it noted that she fell

---

[28] *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984) (stating that "[a] legal conclusion in an affidavit is insufficient . . . to establish the existence of a fact in support of a motion for summary judgment").

[29] *See Simons*, 140 S.W.3d at 347 (stating that the governmental unit can have actual notice even if it does not know that the claimant has actually made an allegation of fault).

10

in the parking garage after stepping into "something slick."  This report bears a stamp stating that it was received by the DFW risk management department on August 25, 2009.  Thus, the risk management department was aware that Boykin was injured after stepping in something slick on the premises.

DFW points out in its brief that the EMS record does not provide the potential source for the "something slick" on the floor.  The failure to identify a source of the substance would have relevance if Boykin's claim was based on an allegation that DFW caused the substance to be put on the floor.  But her claim is that the substance, once there, should have been addressed, and DFW failed to do so.  It therefore does not matter for purposes of DFW's jurisdictional argument whether the EMS report or anything else identified the dangerous substance on the floor.

The transportation department incident report described the accident as reported by DFW employee Bandana Shahi.  It stated the date (August 19, 2009), the time (11:20), and location (D31 Garage L3) of the incident.  The fact statement had this narrative from Shahi:

> I was on my lunch when I heard an agency announcement on the radio for "minor medical injury," at D23-40.  I requested Ms. T. Johnson to check what had happened.  She called me to say that the incident had happened at level 3 garage and she found out that a gentlemen working for Freedom Park [a valet company] was present around the time this incident happened, so she said she would have him call me.  He called me a few minutes later but was not very forthcoming with the information.  All he told me was that a lady had been injured in front of the elevator and the ambulance was there.  540 [Shahi's supervisor] Called me at about 12:05 and asked me to go to D31 garage level to investigate.  When I reached the

11

location I saw maintenance cleaning the floor. They said an oily substance had been spilled on the floor and that a lady had probably slipped and fallen. They had been contacted by the AOC to come and clean and by the time they arrived[,] the injured person was being driven off in the ambulance. As I took the elevator to level 3 garage (31) elevator E3B was leaking. I reported this to 540 who also arrived on [the] scene.

Shahi clarified in her deposition that the time of 11:20 was probably the time she heard the announcement. Shahi did not remember at the time of the deposition what the statement about the leaking elevator meant and that it was "probably" a reference to a second slick spot inside the elevator. Shahi also stated that they report spills to AOC, not directly to a janitorial service.

The AOC log system report included an incident reported at 11:10. It stated that a person had reported that an American Airlines employee had fallen in the Terminal D parking garage. The report by a "TWilson" described the incident as follows:

> AA (Zamina Freeman 5-2707) rptd an AA personnel fell in Term D parking garage departure level at the cross walk to the terminal. She rptd it as a possible sewage back up that caused the fall. At the time the AA personnel was waiting on an ambulance. ENV (RR), Risk Management (Velda Boyer), Meridian (Evllon Littlejohn) [the then-maintenance company], Terminal Support (Coley), Members (Alisha Arhin), and DO (DA) [notified]. Approx. 1231 hrs. the drain was reportedly not the source of the fall. The substance was described by Terminal Support (Coley) as white and greasy. Cause of fall is unknown. ENV form submitted.

This report is some evidence that the risk management department was notified of the incident on the day that it occurred. And Boykin included an excerpt from the deposition of the employee who took the AOC report. The

12

person stated that if an American Airlines employee noticed a spill in an area that needed to be cleaned up, the employee should call AOC. Thus, Boykin produced some evidence that a DFW department is responsible for ensuring that spills are addressed.

Boykin also included an excerpt from the deposition of Chad Schwestka, an assistant terminal manager at DFW. He testified that on the date of the accident, he heard the radio report and walked to the location of the accident. When he arrived, the ambulance had left, and the cleaning company was in the process of cleaning up the area. He saw a substance on the ground that was not translucent. At the scene, he spoke to American Airlines employee Colleen Bessinger who told him that it was another American Airlines employee who had fallen. He stated that he did not recall Bessinger telling him that she had also fallen.

In Bessinger's deposition, she talked about her fall on the same day in the same spot. She stated that when she reported to work at 4:00 a.m., she informed a Ms. Daniels and a Mr. Romer of her fall. The excerpt does not include the part of Bessinger's testimony in which she explained if these two people were employees of DFW or employees of American Airlines. She also stated that a manager at American Airlines told her about Boykin's fall and that she reported to him that she fell on the same substance. She wrote an injury-on-duty report and gave it to the manager.

13

In the part of her testimony in which she answered a question about who else she had told about her fall, she mentioned speaking to Schwestka at the end of her shift, which ended around 1:00 p.m. She testified that he gave her his business card, telling her to call him if she had any problems. Boykin asserts that Bessigner testified that she told Schwestka that she had also fallen in the same spot as Boykin. In the part of Bessinger's deposition that Boykin included, Bessinger does not clearly and unambiguously state that she told Schwestka of her fall. But the context of her testimony suggests that she did so, DFW did not disagree with that characterization of her testimony in the trial court, and it agrees with that characterization on appeal. And we agree that her statement taken within the context of her testimony does at least raise a fact issue about whether she talked with him of her fall.

This deposition testimony raises a fact issue about whether DFW was informed that a person had fallen on a slick substance in the parking garage and that approximately seven hours later, another person had fallen on the same substance in the same spot. The testimony thus raises a fact issue about whether a dangerous condition remained on the ground in the parking garage for hours and that a DFW employee was informed of the fact that the condition had been allowed to remain for that period without being remedied.

The evidence does not establish as a matter of law that DFW was not aware of its fault in contributing to or producing Boykin's injury. Did the evidence at least raise a fact issue about whether DFW knew that it had failed to clean up

14

the substance that was on the ground or to warn that the substance was there? We hold that it does. There is some evidence that a DFW department has some responsibility for making sure that spills at the airport are cleaned up. There is other evidence of how long the substance remained on the floor and that DFW was made aware that the substance had been allowed to remain on the floor. There is other evidence that DFW was made aware that the presence of the substance on the ground resulted in Boykin's injury.

Construing the evidence in the light most favorable to Boykin, the evidence, at the least, raises a fact issue about whether DFW had actual awareness that there had been a dangerous condition in the garage, that the condition was not cleaned up and no warning was given despite DFW's responsibility to do so, and that the condition caused Boykin's injury. Accordingly, we hold that DFW did not meet its burden of presenting undisputed evidence negating the trial court's jurisdiction over Boykin's claim. We overrule DFW's sole issue.

## Conclusion

Having overruled DFW's sole issue, we affirm the trial court's order.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED:  January 30, 2014