**Affirmed and Opinion filed October 9, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00951-CV

### JOSEPH  MILCOUN, Appellant

### V.

### WERNER CO. AND KELLER LADDERS, INC., Appellees

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2016-04946**

### O P I N I O N

Appellant Joseph Milcoun appeals a summary judgment in favor of appellee KLI, Inc. f/k/a Keller Ladders, Inc. on the affirmative defense of limitations. Milcoun sued KLI roughly four months before the statute of limitations expired, but he did not obtain service on KLI until over eighteen months after filing suit. Milcoun contends that the trial court erred in granting summary judgment because his attorney exercised due diligence in obtaining service of process on KLI. We affirm.

# I. BACKGROUND

On January 26, 2016, Joseph Milcoun sued "Werner Co." and "Keller Ladders Inc." alleging that he was injured by a Keller ladder sometime in May 2014. According to Milcoun, before he filed suit, he determined that Keller Ladders had been acquired by Werner and was no longer in business. Nevertheless, out of an abundance of caution, Milcoun decided to sue both entities.

Milcoun successfully served Werner on February 4, 2016. Milcoun attempted to serve Keller Ladders' registered agent, CT Corporation System, but CT Corporation System refused service because it was "withdrawn" as Keller Ladders' registered agent.

Werner filed an answer and the parties engaged in discovery. On October 27, 2016, Werner's attorney emailed Milcoun's attorney and explained that the ladder at issue was manufactured by Keller Ladders prior to an asset purchase of Keller by Werner that excluded "all old/tail liabilities." Werner's attorney stated that he would forward a copy of the asset purchase agreement to Milcoun's attorney and offered to provide additional supporting evidence. Werner subsequently objected to Milcoun's interrogatories and requests for production on the grounds that Werner did not manufacture or design the ladder.

On November 22, 2016, Werner moved for a no-evidence summary judgment. Milcoun filed a response and motion for continuance. On March 14, 2017, the trial court granted Werner's motion, denied Milcoun's request for a continuance, and dismissed Milcoun's claims against Werner. The trial court then granted Werner's request to sever Milcoun's claims against it, making the summary judgment order in favor of Werner final.[1]

---

[1] Werner is not a party to this appeal.

After Werner moved for summary judgment, on December 8, 2016, Milcoun attempted to serve Keller Ladders at a New Jersey address through the Texas Secretary of State. On January 13, 2017, the citation and petition were returned to the Secretary of State bearing the notation "Return To Sender, Not Deliverable As Addressed, Unable To Forward."

Milcoun next attempted to serve Keller Ladders through Mark Parsky, an attorney in private practice in Chicago, Illinois, who had recently represented Keller Ladders in litigation. Parsky filed a special appearance and moved to quash the service of citation on the grounds that neither he nor his law firm had ever been Keller Ladders' registered agent. Milcoun voluntarily withdrew his service of citation to Parsky on February 21, 2017.

On June 9, 2017, Milcoun filed a motion seeking substituted service by publication on Keller Ladders. The trial court granted the motion on July 6, 2017. It is undisputed that Milcoun obtained service on Keller Ladders by publication on August 10, 2017.

On October 3, 2017, KLI, Inc., f/k/a Keller Ladders, Inc. (KLI), filed an answer in which it asserted the affirmative defense of limitations. Days later, KLI moved for a traditional summary judgment asserting that Milcoun's suit was barred by the statute of limitations because Milcoun did not exercise diligence in serving KLI. After an oral hearing, the trial court granted KLI's summary judgment motion on November 6, 2017. In granting the motion, the trial court cited *Miller v. General Motors Corp.*, No. 14-00-00098-CV, 2002 WL 1963493, *2 (Tex. App.— Houston [14th Dist.] Aug. 22, 2002, pet. denied) (not designated for publication), and *Broom v. MacMaster*, 992 S.W.2d 659, 665 (Tex. App.—Dallas 1999, no pet.).

## II. DUE DILIGENCE IN SERVICE OF CITATION

In one issue, Milcoun contends that the trial court erred in granting summary judgment because he acted with due diligence in attempting to serve KLI. Milcoun argues that he explained all periods of inactivity and acted as a reasonable person would in the same or similar circumstances because for nearly a year Werner represented that it was the proper defendant.

### Standard of Review

We review the trial court's grant of summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848.

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

### Analysis of the Issue

It is undisputed that Milcoun filed suit roughly four months before the two-year statute of limitations on his personal-injury claims expired. *See* Tex. Civ.

Prac. & Rem. Code § 16.003(a); *Sharp v. Kroger Tex. L.P.*, 500 S.W.3d 117, 119 (Tex. App.—Houston [14th Dist.] 2016, no pet.). It is also undisputed that Milcoun did not successfully serve KLI until August 10, 2017—over fourteen months after the statute of limitations expired and eighteen months after filing suit. As explained below, the only disputed issue is whether Milcoun exercised diligence in procuring service on KLI.

### *Applicable law on diligent service*

If a party files its petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009); *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam). When a defendant has affirmatively pleaded the defense of limitations, and shown that service was not timely, the burden shifts to the plaintiff to prove diligence. *Ashley*, 293 S.W.3d at 179; *Sharp*, 500 S.W.3d at 119. Therefore, once KLI pleaded limitations and presented summary judgment evidence that Milcoun did not timely serve KLI, the burden shifted to Milcoun to prove that he exercised diligence in obtaining service on KLI. *See Ashley*, 293 S.W.3d at 180; *Sharp*, 500 S.W.3d at 119.

Generally, diligence is a question of fact, but if no excuse is offered for a delay in the service of citation, or if the lapse of time and the plaintiff's acts are such as conclusively negate diligence, a lack of diligence will be found as a matter of law. *Sharp*, 500 S.W.3d at 120. In assessing diligence, we look to whether Milcoun acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served. *See Ashley*, 293 S.W.3d at 179. Milcoun's diligence is measured from the date he filed suit until the time KLI was successfully served. *See Sharp*, 500 S.W.3d at 120; (citing *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007); *Gant*, 786 S.W.2d

at 260). Thus, Milcoun was required to present evidence regarding the efforts he made to serve KLI, and to explain every lapse in effort or period of delay. *See Ashley*, 293 S.W.3d at 179; *Sharp*, 500 S.W.3d at 119.

In its motion for summary judgment, KLI identified two periods in which it claimed that Milcoun failed to exercise diligence in serving KLI: (1) a ten-month period between February 5, 2016, and December 8, 2016; and (2) a 108-day period between February 21, 2017, and June 9, 2017. We address each in turn.

### *The ten-month delay*

According to KLI, Milcoun proffered no evidence to show what was done to effectuate service on KLI between February 5, 2016, when Milcoun unsuccessfully attempted to serve Keller Ladders through CT Corporation System, and December 8, 2016, when Milcoun requested that a second citation be issued for service on Keller Ladders. Milcoun acknowledges that he did not attempt to serve KLI during this time but argues that he acted reasonably based on Werner's representation that Werner was the proper party. Milcoun also argues that he did not intentionally stop trying to serve Keller; instead, he relied on his research that Keller no longer existed and his initial unsuccessful attempt to serve Keller through CT Corporation System.

Milcoun's primary contention is that it was reasonable for him to believe Werner's representation that Werner was the only proper defendant—making it unnecessary to serve KLI—because Werner answered the lawsuit and, in response to Milcoun's request for disclosures, Werner "asserted that the parties were properly named and there were no other potential parties to this case." As support, Milcoun relies on Werner's responses to Milcoun's requests for disclosure (a) and (b), in which Milcoun requested the following information:

6

(a) The correct names of the parties to the lawsuit;

**RESPONSE [by Werner]:** The parties are correctly named to the best of Defendant's knowledge.

(b) The name, address (work and home), and telephone number (work and home) of any potential parties;

**RESPONSE [by Werner]:** None at this time.

Milcoun asserts that since "Keller Ladders was acquired by Werner," it was more than reasonable for him to believe Werner's representations that the only proper defendant was already served. We disagree.

In its discovery responses, Werner merely stated that the parties were "correctly named to the best of Defendant's knowledge" and that it knew of no other potential parties "at this time." Werner's responses, even when viewed in the light most favorable to Milcoun, say nothing about KLI and cannot reasonably be understood to imply that KLI was not a proper defendant or did not need to be served. Likewise, the fact that Werner filed an answer and engaged in discovery in response to Milcoun's lawsuit cannot reasonably be viewed as a tacit acknowledgement that Werner was the only proper party to the lawsuit. Milcoun's explanation for the ten-month lapse in attempting to effectuate service on KLI is unreasonable and demonstrates a lack of diligence as a matter of law. *See Ashley*, 293 S.W.3d at 179 (stating that if "one or more lapses between service efforts are unexplained or patently unreasonable," then the record demonstrates lack of diligence as a matter of law); *Rodriguez v. Tinsman & Houser, Inc.*, 13 S.W.3d 47, 49 (Tex. App.—San Antonio 1999, pet. denied) (explaining that a lack of diligence will be found as a matter of law "if no valid excuse for lack of service is offered").

To the extent Milcoun asserts that he came to believe KLI no longer existed based on his research and his initial failed attempts at service, Milcoun provides no details or summary judgment evidence concerning the steps he took to research

KLI's legal status, the length of time he conducted his research, or the facts he discovered from his research that caused him to believe that KLI no longer existed.[2] Milcoun's bare assertion that he "came to believe" that KLI no longer existed and so did not need to be served does not raise a fact issue as to diligence. *See Ashley*, 293 S.W.3d at 180–81 (holding that twenty hours spent searching the internet did not raise a fact issue as to reasonable diligence during eight-month gap between attempts at service); *Tate v. Beal*, 119 S.W.3d 378, 380 (Tex. App.—Fort Worth 2003, pet. denied) ("The duty to exercise diligence is a continuous one, extending from the date suit is filed until service is obtained."); *Rodriguez*, 13 S.W.3d at 49 (stating that a lack of due diligence can be found as a matter of law "if the lapse of time and the plaintiff's acts, or inaction, conclusively negate diligence").

Milcoun also argues that the trial court erred in relying on the cases cited in the trial court's summary judgment order because the plaintiffs in those cases intentionally delayed serving the defendants for tactical reasons.[3] *See Miller*, 2002 WL 1963493, at *2 (holding plaintiff failed to diligently pursue service on car manufacturer in products liability case when plaintiff intentionally delayed service

---

[2] In the background section of Milcoun's response in the trial court, he stated that "KLI was purchased by Werner . . . in 1999 and according to Werner, KLI is no longer a viable entity," citing to a Werner website that includes "Keller" as a brand. But Milcoun did not contend that locating this website was part of his research or that he relied on the website's information to confirm that KLI no longer existed. On appeal, Milcoun also cites to a KLI website, but because he did not cite or refer to the KLI website in his response, we do not consider it.

[3] In his appellate briefing, Milcoun argues for the first time that KLI and Keller Ladders Inc. are separate entities and asserts that "[i]t almost appears as if KLI, Keller Ladders, and Werner intentionally misled Milcoun in this case to avoid being properly served with process." But Milcoun did not raise these issues in his summary judgment response. To the contrary, Milcoun stated in his response that the ladder at issue "was manufactured, designed, and marketed by Keller Ladders Inc., now known as KLI Inc.," consistent with KLI's representation of its legal name. Accordingly, we do not consider these arguments. *See* Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

until after in-state defendants were served as a tactical decision to prevent car manufacturer from removing case to federal court); *Broom*, 992 S.W.2d at 664–65 (holding plaintiff failed to demonstrate diligent service on hospital in medical malpractice case when plaintiff initially withheld service based on uncertainty whether hospital was an appropriate party and then, after case had been removed to federal court, plaintiff delayed service believing that hospital's presence in suit would complicate efforts to have case remanded to state court).

Milcoun reads these cases too narrowly. The import of *Miller* and *Broom* is that a plaintiff who files suit within the limitations period, but does not serve the defendant until after the statutory period expires, must exercise diligence to have process issued and served on the defendant regardless of any reasons the plaintiff may have for not wanting to do so. *See Broom*, 992 S.W.2d at 665; *Miller*, 2002 WL 1963493, at *2 (citing *Broom*, 992 S.W.2d at 665). As explained in *Broom*, "[t]o hold otherwise would ignore the goal of statutes of limitations to inform defendants in a timely fashion of claims against them and would eviscerate the long established due diligence requirement." *Id*. This observation by the *Broom* court is particularly applicable here:

> In an affidavit filed by Broom's attorney he states that he "withheld" issuance of citation on the hospital because "there was still a question in [his] mind" about whether Presbyterian Hospital was an appropriate party. What Broom's attorney does not acknowledge is that he made the decision to make Presbyterian Hospital a party to the suit when he filed Broom's petition naming the hospital as a defendant. Having made that decision, it was incumbent upon Broom to diligently attempt to serve the hospital to prevent her claims from being barred by the statute of limitations.

*Id.* at 665.

Similarly, once Milcoun decided to sue KLI shortly before the statute of

9

limitations ran on his claims, Milcoun was required to diligently attempt to serve KLI to prevent his claims from being barred by limitations, even if he was unsure of KLI's legal status or had difficulty in serving KLI. *See id.* Milcoun failed to meet his burden in response to KLI's summary judgment motion as to the ten-month period because his explanations for making no effort to serve KLI during this time demonstrate a lack of diligence as a matter of law. *See Ashley*, 293 S.W.3d at 179–81; *Rodriguez*, 13 S.W.3d at 49.

### *The 108-day delay*

KLI next contends that Milcoun showed no diligence from February 21, 2017, when he informed the trial court that he was voluntarily withdrawing his service of citation to attorney Parsky and then waited 108 days before moving for substituted service on KLI on June 9, 2017. Milcoun responds that there was no delay because during this period Milcoun was "trying to keep Werner as a Defendant because Milcoun had unsuccessfully tried to serve Keller Ladders through the Texas Secretary of State and through Parsky."

Milcoun points to the following evidence of the activity during the 108-day period: Parsky filed his special appearance and motion to quash service; Milcoun responded to Werner's summary judgment motion; the trial court conducted an oral hearing on Werner's summary judgment motion; the trial court granted Werner's summary judgment motion; Werner filed its motion to sever; and the trial court signed an order severing Werner's adjudicated claims. Milcoun also points out that he filed his motion for substituted service less than two weeks after the trial court lost plenary power over Werner. Thus, Milcoun urges, there is no unexplained delay during this period and he acted as a reasonable person would under the same or similar circumstances.

But Milcoun's explanation that he was attempting to keep Werner in the

10

lawsuit during the 108-day period, and the evidence on which he relies, is unrelated to Milcoun's burden to demonstrate diligence. *See Slagle v. Prickett*, 345 S.W.3d 693, 698 (Tex. App.—El Paso 2011, no pet.) ("[W]hen a defendant complains of lack of due diligence in service of process, the plaintiff must explain what steps he took to obtain service, not explain why he did nothing."). Having filed suit against KLI, Milcoun was obligated to use diligence in attempting service despite his desire to keep Werner in the lawsuit. *See Broom*, 992 S.W.2d at 665; *see also Lethbridge v. Stout*, No. 14-15-01034-CV, 2017 WL 924522, at *3 (Tex. App.—Houston [14th Dist.] Mar. 7, 2017, no pet.) (mem. op.) (rejecting notion that waiting to serve a defendant while engaging in settlement negotiations with another defendant can establish due diligence); *Montes v. Villareal*, 281 S.W.3d 552, 558 (Tex. App.—El Paso 2008, pet. denied) (citing *Broom* and holding that counsel's desire to delay service on defendant while waiting for expert report and to prevent plaintiff from incurring liability for attorney's fees and costs if report was unsatisfactory did not negate obligation to use diligence in attempting service once the limitations period had passed). Milcoun's failure to present any evidence that he exercised diligence in seeking service of process during this 108-day period demonstrates lack of diligence as a matter of law. *See Ashley*, 293 S.W.3d at 179; *Sharp*, 500 S.W.3d at 119.

Milcoun asserts that we should only find lack of due diligence as a matter of law if there is an unexplained delay of five to six months. But *Ashley* instructs that although the length of the delay in service is important, "it is not necessarily determinative of the question of diligence." *See* 293 S.W.3d at 181. Instead, "we must consider the overall effort expended over the gap in service, and whether the search ceased to be reasonable, especially when other methods of service were available." *Id.* And courts have found lack of diligence as a matter of law over

gaps shorter than the 108-day period at issue here. *See, e.g.*, *Mauricio v. Castro*, 287 S.W.3d 476, 479–80 (Tex. App.—Dallas 2009, no pet.) (thirty-one day delay between expiration of statute of limitations and service); *Rodriguez*, 13 S.W.3d at 48, 51 (twenty-five day delay between expiration of limitations and service); *Perkins v. Groff*, 936 S.W.2d 661, 668 (Tex. App.—Dallas 1996, writ denied) (twenty-one day delay between expiration of limitations and service of citation); *see also Plantation Prod. Props., L.L.C. v. Meeks*, No. 10-02-0029-CV, 2004 WL 2005445, at *6 (Tex. App.—Waco Sept. 8, 2004, no pet.) (mem. op.) (stating that "[i]t is not unusual, given the circumstances of individual cases, for a two-month delay to be considered unreasonable"). We conclude that the trial court would not have erred by granting summary judgment based on either one or both periods in which Milcoun failed to demonstrate due diligence in serving KLI as a matter of law.

### III. CONCLUSION

Because the record demonstrates as a matter of law that Milcoun failed to exercise due diligence in serving KLI, the trial court did not err in granting summary judgment based on the running of the statute of limitations. Accordingly, we overrule Milcoun's sole issue and affirm the trial court's judgment.

/s/   Ken Wise
      Justice

Panel consists of Justices Donovan, Wise, and Jewell.