

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00116-CV

———————————————

RICARDO RAMOS, Appellant

V.

VERACRUZ FOODS, LLC A/K/A EL RANCHO INC., Appellee

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2020-006255-3

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

In four issues, Appellant Ricardo Ramos, appearing pro se, appeals a summary judgment that dismissed with prejudice his personal-injury claim against Appellee Veracruz Foods, LLC a/k/a El Rancho Inc. We affirm because (1) the record establishes that Mr. Ramos's claim was barred by limitations as a result of his failing to exercise appropriate diligence in effecting service of process on El Rancho, (2) the trial court did not err by rejecting Mr. Ramos's excuse that the COVID-19 pandemic prevented him from effecting service in a timely manner, and (3) the discovery rule cannot save Mr. Ramos from his failure to exercise diligence in effecting service.

## II. Factual and Procedural Background

Mr. Ramos's petition alleged that he was grocery shopping at El Rancho and sustained an injury to two of his fingers when he picked up a box containing glass bottles and the box gave way because it had become wet. As shown by the allegations in his petition and the incident report attached to it, Mr. Ramos suffered this alleged injury on October 26, 2018. Mr. Ramos filed suit against El Rancho on October 26, 2020—the second anniversary of the date on which he claims that he was injured.

Six months after the case was filed and with no activity in it, the trial court issued notice that it would dismiss the case for want of prosecution. In response, Mr. Ramos filed a "request for continuance." In that document, Mr. Ramos asserted,

"I have to request for a constable to serve [El Rancho] with the notice of this case." The trial court rendered an order retaining the case.

Three months after the order retaining the case—and fourteen months after the case had been filed—the clerk's record contains a Service Issuance Request Form. Citation was then issued and served on El Rancho.

El Rancho answered and pleaded that "[Mr. Ramos] failed to bring suit within the limitations period because [he] did not use due diligence to effect service." Shortly after answering, El Rancho filed a motion for summary judgment. El Rancho grounded its summary-judgment motion on the fact that it was not served with process for more than fourteen months after Mr. Ramos filed suit. Based on this delay, El Rancho contended that Mr. Ramos's suit was barred by limitations because the gap between filing suit and service was so great that it established as a matter of law that he had not exercised due diligence in effecting service.

Mr. Ramos filed a motion seeking additional time to respond to El Rancho's motion. The trial court did not render an order in response to Mr. Ramos's motion but set a hearing on El Rancho's summary-judgment motion.

Mr. Ramos then filed an "Opposition To Summary [Judgment]." The filing mentioned that Mr. Ramos and his family had been sick "on and off" with COVID-19 since the pandemic began. The opposition alleged that because of

> [t]he declared disaster all across the nation[,] there should be generous exceptions on the due[-]diligence rule[.] [W]e feared for our li[ves] with going places[,] including the [courthouse] and other places that were not

3

> a necessity amid the COVID-19 pandemic and government shutdowns. I would also like to add the court to please take this into consideration that the COVID-19 has claimed many lives[;] there was even a stay[-]at[-]home [order.]

The filing continued by citing the emergency declarations promulgated by the Governor of Texas during the pandemic and various emergency orders issued by the Texas Supreme Court addressing the tolling of limitations periods and providing that courts could suspend deadlines and procedures. The filing also asserted that it "attached documents in response to [El Rancho's] text of [Mr. Ramos's] attempts to ask for [El Rancho] to be cit[ed] as novice pro-se [sic] and prior to December 24th." A variety of documents were attached in no particular order. The attachments included (1) a USLAW[1] article entitled "State of Texas Statute of Limitations (during COVID-19 pandemic)"; (2) the Forty-Sixth and Forty-Seventh Emergency Orders issued by the Texas Supreme Court; (3) disaster declarations issued by the County Judge of Tarrant County; (4) a notice issued by the United States Department of State about the Texas "stay home" order; (5) orders that appear to have been issued by the United States Supreme Court dealing with procedures during the pandemic; (6) a Congressional Research article entitled "The Courts and COVID-19"; (7) El Rancho's incident report from the occasion when Mr. Ramos claimed that he was injured; (8) various e-filing envelopes; (9) a demand letter to El Rancho from a lawyer representing Mr. Ramos; (10) various medical bills and reports; (11) the emergency

---

[1]Per its website description, the organization provides a library of legal information.

4

declaration issued by the Governor of Texas; and (12) a letter from the United States

Postal Service stating that postal-service employees were essential service providers.

After stating that it had given consideration to El Rancho's motion for

summary judgment and "other matters of record," the trial court granted the motion.[2]

Mr. Ramos then filed a notice of appeal.

### III. Analysis

### A.    We set forth the standards that we apply to pro se litigants.

Though Mr. Ramos is appearing pro se, we must hold him to the same

standards as a licensed attorney in our review of his appeal. As we recently explained,

We hold pro se litigants to the same standards as licensed attorneys:

> Although Appellant is proceeding pro se, he must comply with all applicable procedural rules. *See Weaver v. E[-]Z Mart Stores, Inc.*, 942 S.W.2d 167, 169 (Tex. App.—Texarkana 1997, no [writ]). A pro se litigant is held to the same standard that applies to a licensed attorney. *Id.*; *Brown v. Tex. [Emp'l] Comm'n*, 801 S.W.2d 5, 8 (Tex. App.—Houston [14th Dist.] 1990, writ denied). No allowance is to be made for the fact that a plaintiff is not a lawyer. *Weaver*, 942 S.W.2d at 169; *Bailey v. Rogers*, 631 S.W.2d 784, 786 (Tex. App.—Austin 1982, no writ).

*Maddox v. Hutchens*, No. 02-02-00159-CV, 2003 WL 21983260, at *1 (Tex. App.—Fort Worth Aug. 21, 2003, no pet.) (per curiam) (mem. op.); *see also Smale v. Williams*, 590 S.W.3d 633, 639 (Tex. App.—

---

[2]Mr. Ramos's first issue is as follows: "Did the trial court err in excluding critical evidence/exhibit presented at trial?" His brief never explains what this evidence was. Construing this as a reference to the "opposition" document and its exhibits, we will assume that the trial court considered them and will do so ourselves in reviewing Mr. Ramos's arguments. We therefore need not further address Mr. Ramos's first issue. *See* Tex. R. App. P. 47.1.

Texarkana 2019, no pet.) ("The law is well settled that '[a] party proceeding pro se must comply with all applicable procedural rules' and is held to the same standards as a licensed attorney." (quoting *Paselk v. Rabun*, 293 S.W.3d 600, 611 (Tex. App.—Texarkana 2009, pet. denied))). Thus, we cannot grant Appellant any special accommodations simply because he is pro se.

*Rahman v. Discover Bank*, No. 02-19-00182-CV, 2020 WL 2202450, at *2 (Tex. App.—Fort Worth May 7, 2020, no pet.) (per curiam) (mem. op.).

**B.      We set forth the standard of review that we apply to a summary judgment.**

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant must present summary-judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

6

**C.** **To forestall the running of limitations, a party must act diligently to effect service of process; Mr. Ramos was not diligent.**

In his second issue, Mr. Ramos states, "Is there factually sufficient evidence to support the judgment of the trial court?" We will construe this issue to be a general challenge to the trial court's summary-judgment ruling. The trial court did not err because the record demonstrates as a matter of law that Mr. Ramos did not exercise diligence in effecting service on El Rancho.

A personal-injury suit must be filed "not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *see also Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007). However, filing a suit within the limitations period does not stop the running of the limitations period "unless the plaintiff exercises due diligence in the issuance and service of citation." *Proulx*, 235 S.W.3d at 215. "If service is diligently effected after limitations has expired, the date of service will relate back to the date of filing." *Id.*

In a summary-judgment context, there are shifting burdens on the question of whether a plaintiff exercised due diligence in effecting service. A defendant meets its initial burden to establish a limitations defense by showing that service occurred after the limitations period expired. *Flanigan v. Nekkalapu*, 613 S.W.3d 361, 364 (Tex. App.—Fort Worth 2020, no pet.). With this showing in place, "the burden shifts to the plaintiff to explain the delay and to raise a fact question regarding diligence of service." *Id.* (citing *Butler v. Skegrud*, No. 02-14-00168-CV, 2015 WL 4148474, at *2

(Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.)). This burden includes the need to explain every "lapse in effort or period of delay." *Id.* (citing *Proulx*, 235 S.W.3d at 216). Should the plaintiff raise a fact question on the issue of diligence, "the burden shifts back to the defendant to conclusively show why the explanation is insufficient." *Id.* at 365.

The standard to assess diligence is whether "the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Proulx*, 235 S.W.3d at 216. "Generally, the question of the plaintiff's diligence in effecting service is one of fact[] and is determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service." *Id.* But "the plaintiff's explanation of its service efforts may demonstrate a lack of due diligence as a matter of law, as when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.*[3]

---

[3]The Fourteenth Court of Appeals recently charted a number of cases examining what time periods of delay were patently unreasonable and thus established a lack of diligence as a matter of law:

> *Sharp*[ *v. Kroger Tex. L.P.*], 500 S.W.3d [117,] 120 [(Tex. App.—Houston [14th Dist.] 2016, no pet.)] (citing *Li v. Univ. of Tex. Health Sci. Ctr. at Hous*[.], 984 S.W.2d 647, 652 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)); *see also Ashley*[ *v. Hawkins*], 293 S.W.3d [175,] 180–81 [(Tex. 2009)] (plaintiff's unexplained eight-month gap in service efforts demonstrated lack of diligence as a matter of law); *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) . . . ("Plaintiffs' unexplained delay of three periods totaling 38 months in obtaining service on defendant

8

Here, El Rancho was served after the expiration of the limitations period that governed Mr. Ramos's suit; thus, to forestall an adverse summary-judgment ruling, it was Mr. Ramos's burden to raise a fact question that he had acted diligently in effecting service. The record, however, establishes that there was a fourteen-month

establishe[d] failure to use diligence as a matter of law."); *Tran*[ *v. Trejos*, No. 14-17-00998-CV], 2019 WL 962605, at *4 [(Tex. App.—Houston [14th Dist.] Feb. 28, 2019, no pet.) (mem. op.)] ("Crediting Tran's diligence in service efforts after Hurricane Harvey, Tran has not demonstrated ordinary diligence from mid-May through the date Hurricane Harvey struck [in August 2017]."); *Milcoun v. Werner Co.*, 565 S.W.3d 358, 363–66 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (plaintiff's explanations for making no effort to serve defendant during ten-month period both before and after limitations expired showed lack of diligence as a matter of law); *Molina v. Gears*, No. 14-16-00858-CV, 2018 WL 1404340, at *4–5 (Tex. App.—Houston [14th Dist.] Mar. 20, 2018, pet. denied) (mem. op.) (plaintiff's unexplained 81-day delay in first attempting service—which occurred after limitations [had] expired—coupled with failure to achieve service until over ten months after limitations expired amounted to lack of diligence as a matter of law); *Slagle v. Prickett*, 345 S.W.3d 693, 698–99 (Tex. App.—El Paso 2011, no pet.) (plaintiff failed to exercise due diligence when he took no action for three months after he filed his original petition); *Mauricio v. Castro*, 287 S.W.3d 476, 480 (Tex. App.—Dallas 2009, no pet.) (plaintiff failed to exercise due diligence when he filed suit two weeks before limitations expired but offered no explanation for effecting service thirty-one days after limitations expired); *Carter v. MacFadyen*, 93 S.W.3d 307, 314 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (plaintiff failed to exercise due diligence in part due to failure to explain [gap of] two and one-half month[s] . . . between the timely filing of the plaintiff's petition and first service attempts after limitations expired); *Rodriguez v. Tisman & Houser, Inc.*, 13 S.W.3d 47, 51–52 (Tex. App.—San Antonio 1999, pet. denied) (plaintiff failed to exercise due diligence even though service was accomplished a few weeks after limitations period expired).

*Jenkins v. Taylor*, No. 14-21-00175-CV, 2022 WL 1463797, at *3 n.1 (Tex. App.—Houston [14th Dist.] May 10, 2022, no pet.) (mem. op.).

gap between the filing of suit and service of Mr. Ramos's petition on El Rancho and that there was no explanation for the delay—other than the excuse based on COVID-19 that we reject below. This period of delay is unreasonable as a matter of law. *See Ashley*, 293 S.W.3d at 180–81 (stating that as a matter of law, an eight-month unexplained delay failed to create a fact question on diligence).[4]

We overrule Mr. Ramos's second issue.

**D.** **The emergency orders issued by the Texas Supreme Court during the pandemic cannot save Mr. Ramos from his failure to exercise diligence in effecting service.**

Mr. Ramos's third issue reads as follows: "Were all of the days that were declared disaster, [the] tolling of the statute of limitations, and [the] National Emergency orders by the Governor taken into account for this case?" Based on the arguments made on appeal and in the trial court, we construe this issue to be that provisions of the emergency orders issued by the Texas Supreme Court during the COVID-19 pandemic excused Mr. Ramos's lack of diligence and that the trial court erred by failing to follow the orders. We have recently held that the provision of the applicable emergency order appears to grant the trial court discretion to suspend the statute of limitations. *See Prescod v. Tkach*, No. 02-21-00162-CV, 2022 WL 246858, at

---

[4]At the hearing on the motion for summary judgment, Mr. Ramos mentioned an attempt at service in August 2021, and there is an e-filing envelope in the record dated in August 2021. Even if we assume that the envelope documented a service request, this is still an unexplained delay of more than ten months in attempting to obtain service after Mr. Ramos filed suit. A gap of this length is outside the window of time that would create a fact question on whether Mr. Ramos exercised reasonable diligence in attempting to effect service. *See Ashley*, 293 S.W.3d at 180–81.

10

*5 (Tex. App.—Fort Worth Jan. 27, 2022, no pet.) (mem. op.). The trial court refused to suspend the obligation of diligence based on Mr. Ramos's COVID-based excuse, and that decision was not error.

The emergency order that arguably had the greatest impact on the question of diligence in this case is the Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, which was issued by the Texas Supreme Court on September 18, 2020. *See Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster*, 609 S.W.3d 135, 135–38 (Tex. 2020). This was the emergency order in place when Mr. Ramos filed his suit on October 26, 2020. *See id.* This order provided,

> 2. Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
>
>> a. except as provided in paragraph (b), modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than December 1, 2020[.[5]]

---

[5]A similar provision is found in the following emergency orders:

- The Twenty-Ninth Emergency Order of November 11, 2020, which extended the effect of the quoted provision through February 1, 2021, *see Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 863, 863 (Tex. 2020);
- the Thirty-Third Emergency Order of January 14, 2021, which extended the effect of the quoted provision through April 1, 2021, *see Thirty-Third Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 179, 180 (Tex. 2021);
- the Thirty-Sixth Emergency Order of March 5, 2021, which extended the effect of the quoted provision through June 1, 2021, *see Thirty-Sixth*

11

*Id.* at 135.

We recently construed another of the emergency orders issued by the supreme court that has identical language to that of the Twenty-Sixth Emergency Order that we apply to Mr. Ramos's issue on appeal. *See Prescod*, 2022 WL 246858, at *5. We began our analysis in *Prescod* by noting that we construe an emergency order "according to its plain terms, giving the words used their ordinary meaning unless a different meaning is apparent from the context or the plain meaning leads to absurd results." *Id.*

We construed the language of the order that we reviewed in *Prescod* under the assumption that it gave a trial court the power to suspend a limitations period, but we then held that the language left that decision to the trial court's discretion:

> [A]ssuming without deciding that the trial court had the power to modify or suspend limitations as a deadline prescribed by statute, *see Satterthwaite v. First Bank*, No. 02-20-00182-CV, 2020 WL 4359400, at *1 n.1 (Tex. App.—Fort Worth July 30, 2020, no pet.) (mem. op.), the trial court also had discretion to decline to do so. *See Thirty-Sixth Emergency Order*, 629 S.W.3d at 897. The starting point for this provision is that the trial court "may" modify or suspend any deadline. In general, "may" is a

---

*Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 897, 897 (Tex. 2021);

- the Thirty-Eighth Emergency Order of May 26, 2021, which extended the effect of the quoted provision through August 1, 2021, *see Thirty-Eighth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 900, 900 (Tex. 2021); and

- the Fortieth Emergency Order of July 19, 2021, which extended the effect of the quoted provision (with this order having slightly different language than its predecessors) through October 1, 2021, *see Fortieth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 911, 912 (Tex. 2021).

permissive term that gives rise to discretionary authority or grants permission or a power. *See* Tex. Gov't Code Ann. § 311.016(1); *Skeels v. Suder*, No. 02-18-00112-CV, 2021 WL 4785782, at *8 (Tex. App.—Fort Worth Oct. 14, 2021, [no pet.]) (mem. op. on reh'g). Consistent with the use of this permissive term, Texas courts have interpreted the emergency orders as generally permitting trial courts to extend deadlines rather than requiring them to do so. *See Kim v. Ramos*, 632 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (collecting cases). That is, by and large, the order vests trial courts with "broad discretion to modify or suspend 'any deadlines and procedures' prescribed by statute." *Id.*

*Id.* We concluded that the imperatives in the order—that protected constitutional limitations and the health of those involved in judicial proceedings—did not apply to the facts before us in *Prescod. See id.* at *6.

We will follow our holding in *Prescod.* The terms of the Twenty-Sixth Emergency Order did not command the trial court to suspend the limitations period but left that decision to the trial court's discretion. *See Twenty-Sixth Emergency Order*, 609 S.W.3d at 135–38. With Mr. Ramos's protracted period of inactivity in effecting service appearing to last more than a year, we cannot conclude that the trial court erred by refusing to suspend the diligence requirement placed on Mr. Ramos to effect service of his suit. Indeed, Mr. Ramos was apparently able to electronically file his original suit and other pleadings as the case progressed and also was able to e-file a Service Issuance Request Form. With the availability of e-filing, his argument—that he could not act more quickly because the fear of COVID-19 kept him out of the courthouse—rings hollow. By the same token, e-filing negates any argument that the

13

trial court had to excuse his lack of diligence as a means to protect litigants from the risk of COVID-19.

Accordingly, we overrule Mr. Ramos's third issue.

**E.    The discovery rule cannot save Mr. Ramos from his failure to exercise diligence in effecting service.**

In his fourth issue, Mr. Ramos asserts that the discovery rule preserves the timeliness of his claim. He argues,

> Evidence also shows the "discovery rule" also plays a role in this case as the physical injuries were not confirmed/discovered by a doctor until December 14, 2021. Also diagnosed by psychiatrist on Feb[ruary] 3, 2022[,] for mental distress as part of this injury. [In] accordance with the "discovery rule[,]" the statute of limitations do[es] not start until December 14[,] 2021. [*Archambault v. Archambault*, 846 S.W.2d 359 (Tex. App.—Houston [14th Dist.] 1992, no pet.).] [T]here was no way of knowing for sure that these injuries were connected to the incident at "El Rancho" until seen by a doctor.

We reject Mr. Ramos's argument for three reasons. First, he never pleaded or raised the discovery rule in his petition or in his summary-judgment "opposition." A plaintiff must plead the discovery rule in order to place the burden on the defendant to negate the application of the rule. *Gonzalez v. Vantage Bank Tex.*, No. 04-21-00285-CV, 2022 WL 14679567, at *2 (Tex. App.—San Antonio Oct. 26, 2022, no pet. h.) (mem. op.). Second, Mr. Ramos relies on evidence about diagnoses that are not included in the appellate record. We cannot consider material not included in our record. *See Garcia v. Serv. Transp. Co.*, No. 01-21-00235-CV, 2022 WL 3722327, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) (mem. op.) ("Our review is

14

limited to the appellate record, and we cannot consider evidence outside the record on appeal."). And finally, Mr. Ramos pleaded that he suffered a traumatic injury on the date that he was allegedly injured at El Rancho; he cannot rely on the discovery rule to claim that his cause of action did not accrue until the full extent of his injuries manifested themselves. *See Howard v. Fiesta Tex. Show Park, Inc.*, 980 S.W.2d 716, 721 (Tex. App.—San Antonio 1998, pet. denied) (op. on reh'g) (stating that the "discovery rule does not apply to situations in which the traumatic or injurious event causing personal injury is sudden and distinguishable, and the plaintiff knew that injury occurred at the time the event occurred, even if the plaintiff did not know the full extent of injury until much later" and that "[i]n such case, the cause of action accrues at the time of the injurious event, regardless of when the injured party learns of the full extent of injury"). We therefore overrule Mr. Ramos's fourth issue.

## IV. Conclusion

We have considered Mr. Ramos's four issues and have either overruled or not reached them. Accordingly, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: December 29, 2022

15